The material facts governing the question of law to be decided in this case are gleaned from the stipulation entered into between the parties to this suit. They are as follows: Silas R. Miller and Opal Miller were married on the 24th day of September, 1926. Two daughters were born of said marriage. Silas R. Miller and his wife, Opal Miller, together with their two daughters, perished in a common disaster on the 27th day of May, 1937. There is no evidence of any kind as to which party or parties may have survived the other party or parties and for the purpose of this case it is agreed that they died at the same instant. *Page 216 
Charles B. Miller was appointed administrator of the joint estates of Silas Miller and Opal Miller, in the Probate Court of Quay County, New Mexico, on June 2d 1937. Thereafter, on September 7, 1937, upon petition of Mrs. Grace Greathouse, the order appointing Charles B. Miller as administrator of the joint estates was revoked. Charles B. Miller was removed as administrator of the estate of Opal Miller, and Mrs. Grace Greathouse was appointed administratrix de bonis non.
Silas Miller held a life insurance policy with the New York Life Insurance Company in the sum of Two Thousand ($2,000) Dollars for ordinary death, and Four Thousand ($4,000) Dollars for death resulting from accident. This policy named Opal Miller as the beneficiary therein. The policy also contained a provision that in the event of the death of the beneficiary before the insured, the interest of the beneficiary shall vest in the insured.
The Insurance Company paid to Charles B. Miller, while serving as administrator of the estates of Silas B. Miller and Opal Miller, the net proceeds of the policy in the sum of Three Thousand Nine Hundred Sixty-four and 76/100 ($3,964.76) Dollars. After the order appointing Mrs. Grace Greathouse administratrix of the estate of Opal Miller, deceased, was entered none of the proceeds of the policy were turned over to her. Charles B. Miller retaining entire control of all of the estate.
Thereafter the two estates were removed from the Probate Court of Quay County, New Mexico, to the District Court of the Ninth Judicial District, where they are now pending. Charles B. Miller filed his final report as administrator and asked that it be approved, to which the administratrix and the heirs of Opal Miller object.
The heirs of Silas Miller are his father and mother, James Reid Miller and Nancy E. Miller, and the heirs of Opal Miller are her brothers and sisters, to-wit: Grace Greathouse, Johnnie Echols, Caroline Grissam, William M. McCutchen, Walker McCutchen, Van McCutchen, Stockton McCutchen and Una Eller.
The policy of insurance was acquired subsequent to marriage and is dated December 23, 1929. Prior to the marriage neither Silas Miller nor Opal Miller had any separate estate.
The District Court ruled that the money (less certain expenditures) being the proceeds from a life insurance policy acquired by the husband and wife subsequent to marriage was community property and therefore must be divided in equal shares between the heirs of Silas Miller and Opal Miller as provided by 1929 Comp.St. § 68-410. From this adjudication and judgment so entered, this appeal is taken by the heirs of Silas Miller. It is the theory of the appellants that the proceeds of the policy belong to the separate estate of Silas Miller and should be distributed in the manner provided by 1929 Comp.St. § 38-109. *Page 217 
The theory of the appellants, though novel and ingenious, must be rejected by us as it was by the trial court. They base their argument upon the proposition that the proceeds never became a part of the community and that before the appellees could take, as the heirs of Opal Miller, she would have had to survive Silas Miller. Appellants attempt to reason that the insurance policy is in the nature of a trust set up by the husband for the benefit of the wife, with the insurance company as the trustee, and that because the beneficiary died the trust failed and therefore the proceeds of the trust belonged to the estate of the creator of the estate, to-wit, the husband, and should go to his heirs. Appellants also present the theory that the policy of insurance does not indicate that the proceeds should go to the community estate in the event of the death of the beneficiary, but on the contrary provides that the beneficiary was to receive the proceeds of the policy only if she survives the insured and if she did not survive him it was to go to the estate of the insured.
Appellants, however, under our community property view of the law misconceive the situation resulting from the simultaneous death of husband and wife.
As to the argument that because the insured reserved the mere right to change the beneficiary, therefore, the proceeds must go to his estate, (appellants contending that this is the theory laid down in Colovos' Administrator et al. v. Mary Gouvas et al.,269 Ky. 752, 108 S.W.2d 820, 113 A.L.R. 871, and cases therein cited) we dispose of the same by stating that the insured had failed to change the beneficiary and we cannot see where this unexercised right to change the beneficiary fixes the status of the property. We can only test the status of the policy and the proceeds therefrom, that is, whether it be community or separate estate, as of the time of the simultaneous death of the husband and wife. If she had predeceased him the policy by its very terms, as well as by the provisions of 1929 Comp.St. § 38-104, would have become his separate estate. If she had survived him, the proceeds of the policy would have gone to her by the very terms of the policy. Neither of these events occurring, a different result follows:
We view the policy of insurance in the light of our own declaration of the law. We follow what we said in the case of In re White's Estate, 41 N.M. 631, 73 P.2d 316, and later in the case of In re White's Estate, Hilliard v. White, 43 N.M. 202,89 P.2d 36, 37, decided March 20, 1939. In the latter case we said: "This court upon the original appeal strongly indicated, though it did not directly decide, the rule to be that `A life insurance policy payable to the estate of a person is his separate property if the policy was obtained before his marriage, and community property if the policy was obtained subsequent to marriage,' citing McKay on Community Property (2d ed.) Secs. 479-480, and other authority. We now hold directly that this *Page 218 
is the true rule, and, with approval, make further reference to language quoted in the former appeal, viz., that: `The status of proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death.'"
From this it follows that the proceeds of an insurance policy obtained after marriage and payable to the estate of the husband is community, because paid for out of the community funds. In re White's Estate, supra.
If the proceeds of the policy constitute community funds, the wife's interest therein is vested and equal to the husband's interest. In re Estate of Chavez, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769; Baca v. Belen, 30 N.M. 541, 546, 240 P. 803; Beals v. Ares, 25 N.M. 459, 185 P. 780. Her interest being vested and equal to his interest, then the husband becomes the owner of her interest as though it had been a joint tenancy, only if he survives her. Sec. 38-104. In re Estate of Chavez, supra.
Silas Miller did not survive her, and her interest goes to her heirs.
To hold that a wife must survive the husband before she acquires any vested rights in the community property is to hold contrary to the established law of this state. It would make her interest in the community property, not a vested interest equal with the husband's interest, but merely an inchoate right during coverture somewhat analogous to a dower right. This theory we have rejected. Her interest in the community property is an ever-present existing interest equal to that of the husband. Beals v. Ares, supra; Baca v. Belen, supra; In re Chavez's Estate, supra.
We believe at this time it is not amiss to sustain the view we here hold if we quote at length from Beals v. Ares, supra, where we said [25 N.M. 459, 185 P. 789]:
"Dower, under the common law, was the portion of lands or tenements which the wife had for the term of her life of the lands or tenements of her husband after the decease for the sustenance of herself and the nurture and education of her children. 14 Cyc. 880. It was an inchoate right during coverture, vesting absolutely in the wife only upon the death of her husband. Nagle v. Tieperman, 74 Kan. 32, 85 P. 941, 88 P. 969, 9 L.R.A.(N.S.) 674, 10 Ann.Cas. 977. It was not an estate in land, vested or otherwise, but a mere expectancy or possibility incident to the marriage relation, contingent on the wife surviving the husband.
"The wife's interest during coverture, under our statutes, in the community property, is quite different from her right of dower at common law. This was the effect of the holding by the Supreme Court of the United States in the case of Arnett (de Lea) v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.(N.S.) 1040. The courts of California and Louisiana deny to the wife any present interest in the community property, while the courts *Page 219 
of Texas and Washington hold that she has present, vested right of property in the community. The statutes of each state differ more or less on the subject, and the decisions are influenced naturally by the term of the statute. Hence we are required to examine the statutes in force here at the time the rights of the parties hereto became fixed.
"By chapter 62, Laws 1901, the Legislature passed an act defining the property rights and powers of married persons, prescribing grounds for divorce and other matters. Under this act the rights of the spouses as to community property were equal in every sense of the word."
After quoting from the 1901 statutes, and reciting some of the changes made by L. 1907, Ch. 37, this court went on to say in the same case:
"If these two sections stood alone,* it might be that it would be the duty of the court to give to the statute the construction adopted by the California courts, but sections 23 and 31 of the act of 1901, above quoted, were not repealed, and were carried forward into the Code of 1915 as sections 2774 and 2781, respectively. Section 2774 (section 23, act 1901) clearly recognizes an existing, present interest in the wife during the existence of the matrimonial status; for, if she had no interest, it would have been folly for the Legislature to give her the right to maintain a suit for division of the community property upon separation and without divorce. Section 2781 (section 31, c. 62, Laws 1901) recognizes that this interest continues even after divorce, where the property is not divided by the decree in the divorce case. Now, if she had no interest in the property during the existence of the community, but simply an expectancy which would ripen into an interest only upon the death of the husband, and which expectancy continued only during the existence of the marital status, this expectant interest would be cut off by the divorce decree. But the statute says that failure to divide the property on divorce shall not affect the property rights of either husband or wife, and that either may thereafter institute suit for division and distribution thereof, thus recognizing in the wife an interest in the community property during coverture which survives dissolution of the bonds of matrimony.
"Whether section 30, c. 62, Laws 1901, was repealed because it used the terms `onerous title' and `separate estate,' which were not consistent with the Act of 1907, or because the Legislature took it for granted that each of the spouses was the owner of an equal interest, or for some other reason, is wholly immaterial. The sections referred to clearly recognize a present interest in the wife, and the whole act shows that she was an equal partner with her husband in the matrimonial gains. He was constituted by section 16, c. 37, Laws 1907, as the agent or manager of the community property, but this did not vest him with a larger or superior interest in the property upon division. Kohny v. Dunbar,21 Idaho 258, 121 P. 544, 39 L.R.A. *Page 220 
(N.S.) 1107, Ann.Cas. 1913d 492." Beals v. Ares, 25 N.M. 459, 185 P. 780.
We believe the present situation analogous to the situation where a division of community property is required upon the dissolution of the bonds of matrimony by divorce as pointed out in the case of Beals v. Ares, supra. When the decree of divorce is signed the marital status of both spouses ends simultaneously. The community property becomes their property as though it had been held by them as tenants in common. If the property is not divided in the divorce decree the rights of either spouse in the community property are not affected. Either husband or wife may thereafter institute suit for division. If the marriage is dissolved by a simultaneous death, the same result as to the status of the property certainly ought to follow.
Let us assume that a decree of divorce had been granted to Silas and Opal Miller and no division or distribution of the property had been made. By the operation of the divorce decree, Silas and Opal ceased to be husband and wife. The property which prior to the decree of divorce had been community property thereby becomes property held by the former spouses as tenants in common. Let us also assume either one or both of the following situations: Assume that Opal dies, or that both Silas and Opal die simultaneously subsequent to the divorce. Upon what principle then would the heirs of Silas Miller claim any rights in the undivided and undistributed property of his former wife? In the hypothetical case above, all claim of right by Silas (and through him his heirs) ended with the decree of divorce. In the case at bar with death.
It cannot be argued that the majority view of this court in the case of In re Chavez's Estate, supra, is in conflict with the law as laid down in the case of Beals v. Ares, supra, or what we say here. In the Chavez Estate case we held that the Legislature, by the enactment of the community property laws, created a new kind of estate, an estate analogous to the estate known at the common law as joint tenancy. That as an incident to such an estate there is the vesting of the entire estate in the survivor, if it be the husband. That is to say, if the husband survives he takes all. If the wife survives, she takes her half free of her husband's control.
The Chavez Estate case, however, recognized the rule to be that the husband must survive the wife to take all of the community property as his own. It also recognized the rule to be that the wife took her half of the community property freed from the control of the husband if she survived him. Survivorship of either the husband or wife over the other carried with it additional rights in the property not theretofore existing, to-wit, complete ownership in the husband if he survived; freedom from the husband's management of the wife's vested interest in the community if she survived him.
The Chavez Estate case, however, clearly recognized the rule to be that each *Page 221 
spouse, irrespective of survivorship, at all times had an ever-present and existing vested interest in the community property equal unto each other.
The case of In re Chavez's Estate, supra, specifically recognizes Beals v. Ares, supra, as authority for the rule in this jurisdiction that the wife's interest in the community property during coverture was equal to that of the husband, and to that extent there was no conflict between those two cases.
In the instant case Silas and Opal Miller died simultaneously. Neither survived the other. No rights resulting from survivorship arose or can be claimed. The statute which might have given the wife's interest to the husband does not operate in the case before us for the simple reason that the contingency of survivor did not happen. The result is that the respective vested interest of each falls into his or her estate and descends accordingly. There is no other theory that we can follow which would be consistent with our theory of holding that insurance payable to the husband's estate, if taken out after marriage, is community property.
Looking at it another way. Let us consider the nature of the contract of insurance, the character of the interest which both the beneficiary and the insured have in such contract, and the intention of the parties as evidenced, not only by the language of the contract, but also by the object sought to be obtained in its creation. We think the contract, in its nature, is analogous to that of an express trust as argued by appellants and as reasoned by the court in the case of Hilderbrandt v. Ames et al.,27 Tex. Civ. App. 377, 66 S.W. 128. to a slight extent, we believe, it attains some of the attributes of a testamentary disposition without the necessity of administration.
Viewing it then as in the nature of a trust (remembering our established policy of treating an insurance policy acquired subsequent to marriage as community property) it is created by the community (rather than the insured alone) for the protection of the wife.
What actually transpires is that the husband contracts with the insurance company that the wife is to receive the amount named in the policy, conditioned upon the stipulated payment of the premiums during his lifetime. The contract may have been entered into and created by the insured alone. He has the management, control and disposition of the personal property of the community pursuant to § 68-403. He, as such manager of the community, could contract the insurance without the wife's consent. Yet the community creates the substance of it by the payment of the premiums. That seems to be the situation here. By the terms of the contract, the community, not the husband alone, secures an interest in a fund provided by the insurance company equal to the amount named in the policy, payable at the death of the breadwinner to the beneficiary intended to be provided for by the community and out of community funds. This contract, the *Page 222 
community obtains and keeps alive by the payment of the premiums. The amount named in the policy is held by the insurance company in trust for the wife and if the trust fails for want of a beneficiary, it reverts to its true creator, which is the community estate.
Life insurance has for its primary object the protection of those who would be pecuniarily damaged by the death of the insured. The secondary object was to direct the immediate payment in this case to the widow. No administration of the sum contracted to be paid would be required. The widow would receive all, as though it had been so declared by the terms of the husband's will and without administration. The money, however, which was used to make the payment of the premiums was not the property of Silas Miller, but was community property, and the larger sum, or the proceeds of the policy, resulting from the payment of the premiums is likewise community property.
Let us assume that Silas Miller had, subsequent to his marriage to Opal Miller, entered into a contract to purchase a tract of land from one A.B. for the stipulated sum of $1,000, by the terms of which contract he agreed to pay the sum of $100 per year for a period of ten years. Suppose also the tract of land became greatly enhanced in value, either as the result of the peculiar ability of Silas Miller to develop the tract, or outside causes. Suppose also that the husband was making the payments out of his earnings and the wife had contributed nothing towards the payment of the stipulated sums or to the development of the land, merely being a good wife to Silas Miller, staying at home and doing her duty there. Suppose also that they died in a common disaster. Would there then be any question as to the status of the land in question?
By the express terms of 1929 Comp.St. § 68-401, it is provided that all property (certain exceptions being set forth in §§ 68-302 and 68-303) acquired after marriage by either husband or wife, or both, is community property. The policy of insurance, being acquired subsequent to marriage was unquestionably community property. It was kept alive by the payment of the premiums with community funds, and the proceeds resulting from such contract, where both husband and wife die at the same instant, remain as community property to be distributed as such.
Finding no error, the judgment of the District Court is affirmed. It is so ordered.
BRICE and MABRY, JJ., concur.
BICKLEY, C.J., and SADLER, J., specially concurring.
* Referring to Secs. 16 26 of the 1907 Act.