478 P.2d 539

**Angela SCHANUEL, nee Marbie, Plaintiff-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Defendant-Appellee.**

No. 9059.

Supreme Court of New Mexico.

Dec. 21, 1970.

McDevitt & McDevitt, Gallup, for plaintiff-appellant.

E. E. Klecan, James T. Roach, Albuquerque, for defendant-appellee.

## OPINION

WATSON, Justice.

On July 20, 1962, plaintiff-appellant purchased an insurance policy from State Farm Mutual Automobile Insurance Company, defendant-appellee. The policy covered her 1962 Volkswagon, and she alone was named as insured. The policy recited and defined several forms of coverage, but the title page, under "DECLARATION," noted only the following coverages: "A" (Bodily Injury Liability), "B" (Property Damage Liability), "C" (Medical Payments), "D" (Comprehensive), "G$50" (Deductible Collision), and "H" (Emergency Road Service).

In April, 1964, plaintiff-appellant purchased additional coverage under the policy which was evidenced by a "rider," Exhibit "B" to her complaint. Under "EXCEPTIONS AND ENDORSEMENTS" of this rider, the following appeared:

| "Persons Insured – Coverages | S | Persons Insured – Coverages | S |
| --- | --- | --- | --- |
| "MARBLE, ANGELA | 10000 | MARBLE, LUND | 10000" |

There was also a blank space for Coverage "T" which was not utilized. Coverage "T" concerned total disability. Coverages "S" and "T" were set forth in the policy under "Insuring Agreement IV—Automobile Death Indemnity, Specific Disability and Total Disability Insurance." Coverage "S" provided for payment of the amount set forth above in the event of the death of each insured resulting from an automobile accident, and it also provided for the payment of certain scheduled amounts for dismemberment and loss of sight resulting from an automobile accident. If death resulted, the payment for it was to be reduced by any payments made for dismemberment or loss of sight.

At the time of the purchase of the additional coverage, Lund Marble, appellant's son, was 25 years of age, a student, and self-supporting. He married on March 10, 1965, and lived with his wife until, as a result of an automobile accident, he died on March 25, 1965. The appellee insurance company paid the proceeds of the policy to decedent's widow by a check made payable to "The Estate of Lund Marble." It was endorsed "The Estate of Lund Marble Jr. by Deanna J. Marble (wife) for deposit for Stacy Leigh Marble." Appellant, who had paid all of the premiums on the insurance policy, brought this action claiming the payment should have been made to her as the surviving insured.

Summary Judgment was granted the insurance carrier, and the sole question involved in this appeal is whether the trial court correctly construed the insurance policy in determining that the proceeds as a result of Lund's death were correctly paid or should have been paid to appellant.

Each party to the action asked and obtained the answer to the interrogatories from the other as to which provisions of the policy were relied upon for payment under their respective contentions. The appellant stated she relied upon:

"All paragraphs applicable to coverage 'S' under Insuring Agreement IV (Pages 6–7), and all conditions, definitions, etc., applicable thereto as contained by reference in said Insuring Agreement or as a part of said policy, but particularly Paragraph Twelve of the Insuring Agreement IV (Page 7), Paragraph Nine of policy conditions (Page 9), sub-paragraph entitled 'Insured', under paragraph entitled 'Definitions' (Page 7)."

Paragraph 12 and the definition of "insured," both of which were under the same general heading as Coverage "S," i. e., "Insuring Agreement IV," read as follows:

"12. Payment of Claim; Autopsy—Coverage S. Payment hereunder shall be made to the insured or, if the insured be a minor or incompetent person, to a parent or guardian; and if the insured is deceased, such payment shall be made to his surviving spouse if a resident of his household at the time of the accident, otherwise to the insured's estate. Any payment so made shall, to the extent thereof, constitute a complete discharge of the company's obligations hereunder and the company shall not be required to see to the application of the money so paid.

"The company shall have the right and opportunity to make an autopsy where it is not forbidden by law."

"Insured—means under coverages S and T the persons designated as such in the exceptions of the declarations."

Paragraph 9 was under the heading "POLICY CONDITIONS—APPLICABLE TO ALL COVERAGES UNLESS OTHERWISE NOTED"; it read as follows:

"9. Joint and Several Interests. If two or more insureds are named in the declarations, this policy shall apply to them jointly and severally, but the inclusion of more than one insured shall not operate to increase the limits of the company's liability."

Appellant points out to us no other applicable provisions of the policy but contends that if the policy is ambiguous it must be construed in favor of the insured, and that it should be construed as of the date of the issuance of the policy and not as of the date of death.

Appellee's answer as to what provisions of the policy it relied upon for refusing to pay plaintiff said:

"The basis for denying plaintiff's claim is that there are no sections in the insurance policy which specifically state that the plaintiff is to receive the proceeds of the policy in question. Specifically, defendant relies upon the entire coverage 'S' Section. Specifically, the definition of insured on Page 7 and Paragraph 12 of the Insuring Agreement 4, on Page 7 and Exhibit B of the Complaint. *In denying this claim, defendant will rely upon all of the provisions which the plaintiff alleges support her contention.*" (Emphasis added by the court.)

We have described the provisions of the rider, Exhibit "B" of the complaint. There, both the appellant and her son were listed as persons insured under Coverage "S" for $10,000.00.

Appellant filed an affidavit in which she stated that appellee's agent told her when she purchased the Coverage "S" rider that it would provide her indemnity in the amount of $10,000.00 in the event her son was killed and would provide her son the same in the event of her death, and that she relied upon this. She makes no point

of this, however, except as it would reflect upon the intent of the parties in the event the provisions of the policy are deemed ambiguous. She cites Morton v. Great American Insurance Company, 77 N.M. 35, 419 P.2d 239 (1966), and Knotts v. Safeco Insurance Company of America, 78 N.M. 395, 432 P.2d 106 (1967).

In Morton, we said:

"While a policy of insurance, like any other contract, must be construed so as to give effect to the intention of the parties, where language of a policy is susceptible of more than one construction, the test is not what the insurer intended the words of the policy to mean, but what a reasonable person in the position of the insured would understand them to mean. (Citing Cases.)" [77 N.M. at 38, 419 P.2d at 241.]

There, we held that a substantial conflict of authorities in the interpretation of similar policies was some evidence that the term was not unambiguous. In the case before us, neither party has shown us an authority interpreting the contract provisions here involved. We must decide whether the language of the policy is susceptible of more than one construction. See Nunn v. Nunn, 81 N.M. 746, 473 P.2d 360 (1970).

There is only one provision in the policy stating to whom payments under Coverage "S" will be made. This is paragraph 12, quoted above. There is only one provision in paragraph 12 for such payment in the event the insured is deceased. It states that if the insured is deceased, payment is to be made to his surviving spouse if a resident of his household at the time of the accident; otherwise, to the insured's estate. This seems clear. It can hardly be construed as requiring payment to the surviving insured. Standing alone this is susceptible of only one construction. But does paragraph 9 change this construction so that a reasonable person in the position of the insured would otherwise construe the payment provision? We think not.

Of paragraph 9 appellant states that "jointly and severally" means "either one of the persons (insureds) individually or both of them together." But paragraph 9 also states: "but the inclusion of more than one insured shall not operate to increase the limits of the company's liability."

Appellant does not contend that if one amount is to be paid it should be paid to both insureds or divided between the surviving insured and the decedent's estate. Requiring payment to "either one of the persons individually" would not require payment to the survivor of the two but is consistent with requiring payment to the decedent's estate or designee, for his several or individual rights are not necessarily terminated on his death. Only in the event of a joint tenancy would the survivor be entitled to the proceeds, and paragraph 9 does not say that two or more insureds will be joint tenants.

Where the policy, under paragraph 12, provides for payment on death to the widow or estate, it would be a strained construction to say that, when read with the joint and several clause in paragraph 9, it means payment to the surviving insured or renders the provisions of paragraph 12 ambiguous. We do not resort to strained construction to establish the existence of an ambiguity. Anaya v. Foundation Reserve Insurance Company, 76 N.M. 334, 414 P.2d 848 (1966); Gray v. International Service Insurance Company, 73 N.M. 158, 386 P.2d 249 (1963).

An insurance contract should be construed as any other contract to give effect to the intent of the parties at the time the contract was made. Lonsdale v. Union Insurance Company, 167 Neb. 56, 91 N.W.2d 245 (1958). It was appellant's duty to read the policy. Western Farm Bureau Mutual Ins. Co. v. Barela, 79 N.M. 149, 441 P.2d 47 (1968); Porter v. Butte Farmers Mu-

tual Insurance Company, 68 N.M. 175, 360 P.2d 372 (1961). A person in her position could only have understood from the policy that upon the death of her son the proceeds would be paid to either his spouse or his estate. There is no provision for payment to appellant. She should have known even prior to Lund's marriage that in any event she would recover only as a beneficiary of his estate.

Appellant cites Voss v. Connecticut Mutual Life Ins. Co., 119 Mich. 161, 77 N.W. 697 (1899), and states that it is established in law and reason that the nomination of a beneficiary is effective as of the date of the issue of the policy, and that the rights created become vested. Even if this were so, under the terms of the policy here had Lund died prior to his marriage appellant had only an expectancy from her son's estate. Her claim here is not based on this expectancy but as a surviving insured. The policy is the measure of the rights of those under it, and their rights are construed within the four corners of the contract. Spicer v. New York Life Ins. Co., 263 F. 764 (N.D. Ala. 1920), affirmed 268 F. 500 (5th Cir.), cert. denied 255 U.S. 572, 41 S.Ct. 376, 65 L.Ed. 792.

■ Ownership of the policy is not determinative in itself of ownership of the proceeds, Hickson v. Herrmann, 77 N.M. 683, 427 P.2d 36 (1967); nor could the proceeds of a death claim of one jointly insured policyholder be deemed as held in joint tenancy. Since one insured must die before the proceeds are available, there could never be unity of ownership. See Equitable Life Assurance Soc. of United States v. Weightman, 61 Okl. 106, 160 P. 629 (1916), and Hernandez v. Becker, 54 F.2d 542 (10th Cir. 1931).

The judgment of the trial court is affirmed.

It is so ordered.

COMPTON, C. J., and SISK, J., concur.