619 P.2d 1251

**Nancy BARELA, Individually and as Personal Representative of George Fermin Barela, Deceased, and as Mother and Next Friend of Kimberly Ann Barela, a Minor, Plaintiff–Appellant,**

v.

**Sadie BARELA, a/k/a "Saidy" Barela, Jane Doe and John Doe, Defendants–Appellees,**

and

**Bakery and Confectionery Union and Industry International Health Benefits Fund, Defendant–Appellee, Cross-Appellant.**

No. 4539.

Court of Appeals of New Mexico.

Nov. 6, 1980.

208

Robert R. Fuentes, Timothy P. Woolston, Albuquerque, for plaintiff–appellant.

Anita P. Miller, McCulloch, Grisham & Lawless, P. A., Albuquerque, for defendants–appellees Sadie Barela and Does.

Kenneth F. Hickey, D. Edward Wilson, Jr., Washington D.C., Gerald R. Bloomfield, Albuquerque, for defendant–appellee, cross–appellant; Morgan, Lewis & Bockius, Washington, D.C., Kool, Kool, Bloomfield & Hollis, P.A., Albuquerque, of counsel.

OPINION

WOOD, Chief Judge.

Two issues are decided: (1) the right of the designated beneficiary to the death benefits provided by a health benefits plan; and (2) the propriety of an award of attorney fees as costs upon the federal court's remand of the case to a state court.

The following facts and proceedings are not disputed.

(a) George Fermin Barela was employed by a bakery. By the terms of a collective bargaining agreement between the employer and Barela's local union, Barela was provided with a health benefits plan which included death benefits in the sum of $20,000, to be paid upon Barela's death.

(b) In 1969 Barela designated his mother, Sadie Barela, as recipient of the death benefits. This designation was never changed.

(c) Plaintiff married Barela in 1972.

(d) Barela died in 1978.

(e) Plaintiff made demand upon defendant B & C (Bakery and Confectionery Union and Industry International Health Benefits Fund) for the death benefits. B & C refused to pay the death benefits to plaintiff because she was not the beneficiary designated by Barela. B & C paid the death benefits to Sadie Barela, the designated beneficiary.

(f) Plaintiff brought suit in New Mexico District Court claiming entitlement to all the death benefits, claiming that B & C wrongfully disbursed the death benefits to Sadie Barela, and claiming punitive damages for the alleged wrongful disbursement.

(g) B & C removed the suit to the United States District Court. Its petition for removal asserted that it was an " 'employee welfare benefit plan' " established under

specified federal statutes, that payment of benefits under the plan was governed by federal law and, therefore, jurisdiction was in the federal court.

(h) Plaintiff moved that the federal court remand the suit to state court. Her motion denied that she was a beneficiary of any fund involved and therefore the federal court lacked jurisdiction and the case had been improperly removed.

(i) The federal court remanded the case to state court. The memorandum opinion of the United States District Judge pointed out that plaintiff's claim was not that she was either a participant in or a beneficiary of the fund; rather, "Plaintiff alleged in her complaint that a portion of the money used to pay the recurring premiums on the policy was community funds and therefore the death benefit is community property and she is entitled to it pursuant to the New Mexico law of intestate succession."

(j) Upon the return of the case to New Mexico District Court, plaintiff moved that the state court award costs and attorney fees in connection with the removal to federal court. Defendants moved for summary judgment.

(k) The New Mexico District Court granted plaintiff's motion, awarding costs and attorney fees of $750, plus New Mexico gross receipts tax against all defendants although only B & C petitioned for removal. It then granted defendants' motion for summary judgment.

(*l*) Plaintiff appealed and B & C cross appealed. The transcript filed in this Court did not include all the material requested by plaintiff. Pursuant to R.Civ.App.Proc. 8(c) we have obtained, and utilized, the original district court record.

*Right of the Designated Beneficiary to the Death Benefits*

Relying on § 59–16–15, N.M.S.A. 1978, plaintiff gave notice of her claim before B & C paid the death benefits. See also § 59–28–1, N.M.S.A. 1978. However, the exact type of "insurance" policy is not identified. Because of this lack of identification we do not know whether any insurance

statute provided that B & C was to pay the death benefits to Sadie Barela. See § 59–18–4(A)(9), N.M.S.A. 1978. Defendants do not rely on any statutory provision. We do not consider New Mexico statutes pertaining to insurance in deciding the propriety of the summary judgment. Compare *Bauer v. Bates Lumber Company, Inc.*, 84 N.M. 391, 503 P.2d 1169 (Ct.App.1972).

Defendants were granted summary judgment on the basis that the death benefits were paid to the person designated to receive the benefits. In contending that the summary judgment was improper, plaintiff likens the health benefits plan to a term insurance policy which was "renewed and reearned on a daily basis." See *Phillips v. Wellborn*, 89 N.M. 340, 552 P.2d 471 (1976). Plaintiff argues that "as the policy was a benefit of work, conditioned upon continued employment, the policy became community property after the first day of employment after marriage." Inasmuch as the details of the health benefits plan are not included in the appellate record we assume, but do not decide, that plaintiff's contentions are correct and that the "insurance" policy was community property after Barela's marriage.

On the basis that the "insurance" policy was community property, plaintiff asserts the benefits under that policy were also community property and Barela could only dispose of one–half of the benefits. Although plaintiff has reduced her claim from all of the death benefits to one–half of the death benefits, it makes no difference in this case.

■ Plaintiff's contention is that if the "insurance" policy is owned as community property, then benefits payable under such a policy are also community property. This contention is incorrect, it fails to distinguish between the policy and the proceeds. Ownership of the policy is not determinative, in itself, of ownership of the proceeds of the policy. *Harris v. Harris*, 83 N.M. 441, 493 P.2d 407 (1972); *Schanuel v. State Farm Mutual Automobile Ins. Co.*, 82 N.M. 211, 478 P.2d 539 (1970); *Hickson v. Herrmann*, 77 N.M. 683, 427 P.2d 36 (1967).

This case does not involve a contest between plaintiff and Barela's estate as to the right to the proceeds. Thus New Mexico decisions involving ownership interests as between spouses, former spouses, or heirs of a spouse are not applicable. Nor are cases applicable which involve a spouse or a spouse's estate as beneficiary, or which involve a failure to dispose of an insurance policy upon divorce. See *Romero v. Melendez*, 83 N.M. 776, 498 P.2d 305 (1972); *Harris v. Harris*, supra; *Hickson v. Herrmann*, supra; *In re Miller's Estate*, 44 N.M. 214, 100 P.2d 908 (1940); *In re White's Estate*, 43 N.M. 202, 89 P.2d 36 (1939).

Plaintiff's claim is that because she had a community property interest in the insurance policy that provided for death benefits, that she also has a community property interest in the proceeds of the policy. This contention overlooks the statement in *Harris v. Harris*, supra:

An insurance policy is a specialized form of property and a valid mode of disposition of the proceeds is by designation of the beneficiary who will receive them on the happening of a stated event.

5 Couch on Insurance 2d (1960) states: § 27:165. . . .

The insurer is justified in making and is required to make payments in accordance with the terms of its contract with the insured . . . . The terms of the policy or certificate decide the question of title to the proceeds . . . .

§ 27:166. . . .

A named beneficiary takes insurance money, if at all, directly by the terms of the contract, and not derivatively, or in the capacity of heir or legal representative of the insured; the proceeds do not become a part of the estate of the insured and thus the law of descent and distribution has no application.

Plaintiff is not seeking reimbursement of community property used to pay premiums (if any) after Barela's marriage to plaintiff. Plaintiff is not claiming that Barela's designation of his mother as the beneficiary, at a time Barela was unmarried, was an invalid designation. Plaintiff is not claiming that her marriage to Barela invalidated the designation of the mother as the beneficiary. Plaintiff is not claiming that Barela's continued participation in the policy after marriage, or that the failure to change the beneficiary after marriage, defrauded plaintiff.

Plaintiff's claim is that because, after the marriage, the policy was community property it was improper for B & C to pay the death benefits in accordance with its contract with Barela, and it was improper for the mother to receive the proceeds that B & C had contracted to pay to her. This claim, based solely on a community property interest in the policy, was insufficient to raise a fact issue as to the propriety of paying the proceeds to the designated beneficiary. This holding is not contrary to *Phillips v. Wellborn*, supra. The decision in *Phillips* discussed a former wife's ownership interest in a term life insurance policy, but did not discuss the right of the parents, as named beneficiaries, to the proceeds of the policies involved.

Plaintiff claims that Barela's designation of his mother as beneficiary had the legal effect, under the community property law, of a designation of only one–half of the proceeds because that was the extent of Barela's power to dispose of community property. This claim is meritless for the following reasons:

(a) Barela designated his mother as beneficiary in 1969 when Barela was unmarried. This designation in 1969, at the inception of the health benefits contract, is to be given effect. *Schanuel v. State Farm Mutual Automobile Ins. Co.*, supra. An unexercised right to change the designation had no effect on the disposition of the proceeds. See *In re Miller's Estate*, supra.

(b) That the policy may have become community property upon Barela's marriage in 1972 had no effect on the designation of beneficiary. Until enactment of the Community Property Act of 1973, see § 40-3-6, N.M.S.A. 1978, Barela, as manager of the personal property of the community, had the power to dispose of communi-

ty personal property. See § 57–4–3, N.M. S.A. 1953 Comp. (Repl.Vol. 8, pt. 2). After enactment of the Community Property Act of 1973, Barela had the power to dispose of community personal property under § 40–3–14(A) or (B)(1), N.M.S.A. 1978. See Bingaman, *The Community Property Act of 1973, etc.*, 5 N.M.L.Rev. 1 at 39–44. Barela's power to designate his mother as beneficiary of all the death benefits was not invalidated by his marriage or by the community property law.

*Attorney Fees as Costs Upon Remand*

■ Upon remand the state court granted plaintiff's motion for an award of costs and attorney fees in opposing defendants' removal of the case to federal court and in successfully moving, in federal court, for remand to the state court. Although the judgment is worded in terms of "costs and reasonable attorney fees" the transcript of the motion hearing shows that the award was based entirely on a reasonable attorney fee and not based on traditional costs.

Defendants suggest that a state court lacks authority to award attorney fees in removal cases. We do not consider that question. See *Dow Chem. Co. v. District 50 Allied & Tech. W. of U.S. & Can.*, 315 F.Supp. 427 (D.Colo.1970).

Defendants contend that the award of any attorney fees was improper. We agree.

28 U.S.C.A. § 1447(c) states: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." There is no contention that attorney fees may not be included as costs under this statute.

Defendants' claim is that an award of attorney fees as costs under 28 U.S.C.A. § 1447(c) requires a determination that the removal to federal court was in bad faith. Federal decisions have so interpreted this federal statute. *Smith v. Student Non–Violent Coordinating Committee*, 421 F.2d 522 (5th Cir. 1969); *Macdiarmid v. Lawbar Petroleum*, 456 F.Supp. 503 (W.D.Tex.1978); see *American Oil Company v. Egan*, 357 F.Supp. 610 (D.Minn.1973); *Selected Risks Ins. Co. v. Kobelinski*, 421 F.Supp. 431 (E.D. Pa.1976).

Plaintiff's motion in the federal court, to remand to the state court, did not ask for an award of costs; the motion for costs was made to the state court after remand. Although the federal court was not asked to rule on the question of costs, its memorandum opinion negates bad faith in the removal to federal court. Removal was on the basis of federal preemption. The memorandum opinion identifies federal decisions holding "that federal preemption gives rise to removal jurisdiction." However, the memorandum opinion agreed with other federal cases holding that federal preemption is a matter of defense to a state law claim and not grounds for removal.

Plaintiff's motion for costs in the state court did not assert that removal had been in bad faith, nor was a bad faith claim argued to the state court. The state court's award seems to be based entirely on the fact that the case had been remanded; neither the judgment for costs nor the state court's "findings" suggests that removal was in bad faith. We follow the above–cited federal decisions and hold that, in the absence of a determination that removal to the federal court was in bad faith, the award of attorney fees, as costs, cannot stand.

Summary judgment in favor of defendants is affirmed. The award of costs against defendants in connection with the removal to federal court is reversed. The trial court shall enter a new judgment consistent with this opinion.

IT IS SO ORDERED.

HERNANDEZ and ANDREWS, JJ., concur.