2004-NMCA-007

83 P.3d 298

**Feloniz N. MARTINEZ,**
**Plaintiff–Appellant,**

v.

**Felix G. MARTINEZ, Defendant–**
**Appellee.**

**No. 21,223.**

Court of Appeals of New Mexico.

Nov. 7, 2003.

**12**

Rachel E. Higgins, John Wayne Higgins & Associates, Albuquerque, NM, for Appellant.

J. Ronald Boyd, Santa Fe, NM, for Appellee.

## OPINION

FRY, Judge.

{1} This case arises from the 1983 divorce of Plaintiff Feloniz Martinez (Wife) and Defendant Felix Martinez (Husband). Wife's complaint averred that she is a tenant in common in certain real property purchased by Husband during their marriage but not distributed in their divorce decree. Based on this theory, she sought an accounting with respect to a business operated on the property, partition, and damages for Husband's allegedly fraudulent actions in concealing Wife's interest in the property at the time of the divorce. The trial court granted summary judgment in favor of Husband. Wife appeals. We consider (1) whether issues of fact precluded summary judgment on Wife's claim of fraud, (2) whether the statute of limitations barred the fraud claim, (3) whether Wife's partition action is subject to a statute of limitations defense consistent with *Plaatje v. Plaatje*, 95 N.M. 789, 626 P.2d 1286 (1981), and (4) whether laches barred the partition claim. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

{2} The parties appear to agree on many of the basic facts. Wife and Husband married in 1955. In 1978, Husband purchased a one-half interest in a piece of commercial real property in Taos County, New Mexico. Although he was married to Wife at the time, Husband represented himself as a single person on documents related to the purchase. Located on the property was an ongoing business, the Old Martinez Hall and El Cortez Tavern (tavern), which Husband and the co-owners operated together. Early in 1983, prior to his divorce from Wife, Husband purchased an interest in an adjacent piece of property. According to Wife, he again represented himself as a single person; Husband denied this allegation. While Husband in his affidavit denied using community funds to purchase either piece of property, his attorney admitted at the hearing on the motion for summary judgment that the property was community property for purposes of the motion.

{3} Wife acknowledges that during the marriage she knew about the existence of the two lots and the tavern (Taos property) and Husband's ownership interest in the property. The couple divorced in April 1983, at which time Wife asked Husband whether she had an ownership interest in the Taos property.

{4} The parties agree that they discussed the Taos property at the time of the divorce, but their versions of history diverge with respect to the content of that conversation.

According to Wife, Husband told her that she had no rights in the property and that it belonged to Husband separately. In his affidavit, Husband suggested that at the time of the divorce Wife did not want an interest out of concern that she might be responsible for related debt. On appeal, Husband argues that even if his words were false or misleading as to the legal status of the Taos property, he made no factual misrepresentations.

{5} The parties further agree that their divorce decree did not specifically mention the Taos property. However, the parties dispute whether the decree nevertheless included the property. Husband argues that the decree may have intended to divide the Taos property, even though it was not mentioned in court documents. Wife contends that the divorce decree "did not divide or distribute any interest in the property." The decree is not part of the record on appeal.

{6} In 1996, approximately thirteen years after the divorce decree, Wife filed the action underlying this appeal. She claimed an interest in the Taos property as a tenant in common on the ground that during the marriage she acquired a community property interest, which automatically became a tenancy in common upon divorce. *See In re Miller's Estate*, 44 N.M. 214, 220, 100 P.2d 908, 912 (1940). In keeping with this theory, Wife's complaint sought an accounting of profits from the tavern and partition. In addition, she alleged damages resulting from Husband's alleged fraudulent misrepresentation in telling her that she had no interest in the property.

{7} Husband moved for summary judgment on the basis that the statute of limitations barred Wife's claim. Alternatively, Husband argued the doctrine of laches barred recovery by Wife. The trial court granted summary judgment, and Wife's appeal followed.

**STANDARD OF REVIEW**

{8} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *See Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review this legal question de novo, viewing the pleadings, affidavits, and depositions in the light most favorable to the nonmoving party. *Id.; see also Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990).

**DISCUSSION**

{9} The parties' arguments invoke legal theories including fraud, various statutes of limitations, and the doctrine of laches. Underlying the dispute, however, are basic tenets of community property. Specifically, this litigation is premised on the rule that property acquired during marriage is presumptively community property, NMSA 1978, § 40–3–12(A) (1973), and the corresponding principle that upon dissolution of marriage, community property not otherwise disposed of becomes owned in the form of a tenancy in common. *In re Miller's Estate*, 44 N.M. at 220, 100 P.2d at 912; *see also* NMSA 1978, § 40–4–20(A) (1993) (stating that failure to divide property at divorce does not affect property rights). With these fundamental legal principles in mind, we turn to the parties' arguments.

*Wife's Allegations of Fraud*

{10} Wife's complaint sought damages as a result of Husband's fraudulent misrepresentation and breach of fiduciary duties. Husband contended below and the trial court agreed that his statement to Wife—that the land in question was not community property—was a statement of his opinion as to the legal status of the property, not a statement of fact. Consequently, he argued, as a matter of law the statement could not be deemed fraudulent because fraud requires proof of a misrepresentation of fact. *See* UJI 13–1633 NMRA 2003 (stating that the elements of fraud include "a representation of fact ... which was not true").

{11} We do not agree. "[T]here is a recognized exception to the general rule that misrepresentations of law are not actionable, which exception makes such misrepresentations actionable when the parties occupy a fiduciary relationship or where one party has a superior means of information." *Rogers v. Stacy*, 63 N.M. 317, 320, 318 P.2d 1116, 1118 (1957). Here, the parties were married when

Husband acquired the property, and they were married when Husband told Wife that the property was his sole and separate property. Thus, they were in a fiduciary relationship and Husband owed Wife a fiduciary duty in his management of community property. *See Roselli v. Rio Cmtys. Serv. Station, Inc.,* 109 N.M. 509, 514, 787 P.2d 428, 433 (1990) (determining that a spouse's "power to manage and dispose of the community's personal property is subject to a fiduciary duty to the other spouse"); *Fernandez v. Fernandez,* 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct.App.1991) (explaining that "[e]ach spouse owes the other a fiduciary duty when managing community property"). Therefore, Husband's alleged misrepresentation of law is actionable, and the trial court's determination to the contrary was error. Of course, to succeed Wife must establish the other elements of her fraud claim, such as Husband's knowledge or reckless disregard of the falsity of his statement, his intent to deceive, and Wife's reliance on the statement. *See* UJI 13–1633 (listing the elements of fraud).

{12} The only other basis Husband offered in support of summary judgment on the fraud claim was that the four-year statute of limitations applicable to fraud barred Wife's claim. *See* NMSA 1978, § 37–1–4 (1953). He argued that Wife's delay of thirteen years from the date of Husband's alleged misrepresentation to the date when Wife sought legal advice and filed her complaint precludes her action. However, we agree with the trial court's finding that there are issues of fact regarding when Wife discovered the fraud and the statute of limitations began to run. *See Ambassador E. Apts., Investors v. Ambassador E. Invs.,* 106 N.M. 534, 536, 746 P.2d 163, 165 (Ct.App. 1987) (explaining that statute of limitations applicable to fraud actions "does not begin to accrue ... until the fraud is discovered by the aggrieved party"). While Husband attested that Wife knew about his ownership interest in the contested property before the divorce, Wife attested that she had no reason to disbelieve Husband's representation that the property was his sole and separate property until she consulted an attorney many years after the divorce. This is a classic fact dispute best resolved by the fact finder.

{13} We also conclude there are issues of fact as to whether Husband's conduct served to toll the running of the statute of limitations. In the context of a fiduciary relationship, a party with superior knowledge has a duty to disclose material information, and failure to disclose such information constitutes fraudulent concealment that tolls the statute of limitations. *Garcia v. Presbyterian Hosp. Ctr.,* 92 N.M. 652, 654–55, 593 P.2d 487, 489–90 (Ct.App.1979). The parties' conflicting affidavits and the reasonable inferences drawn from them convince us that this issue should also be resolved by the fact finder.

*Wife's Claims for Accounting and Partition*

{14} Wife's claims for accounting and partition both flow from the legal presumption that she acquired a community property interest in the Taos property because Husband purchased it during the marriage. The parties do not dispute the legal proposition that to the extent Wife had a community property interest in the Taos property, her interest took the form of a tenancy in common upon divorce. *See In re Miller's Estate,* 44 N.M. at 220, 100 P.2d at 912.

**Whether the Claims Are Barred by a Statute of Limitations**

{15} Wife brings her claims for accounting and partition pursuant to Section 40–4–20(A), which provides as follows:

> The failure to divide or distribute property on the entry of a decree of dissolution of marriage or of separation shall not affect the property rights of either the husband or wife, and either may subsequently institute and prosecute a suit for division and distribution or with reference to any other matter pertaining thereto that could have been litigated in the original proceeding for dissolution of marriage or separation.

The statute refers simply to "property," without specifying real or personal. Wife contends that this statute permits her to bring an action to divide real property subject to no time limitation. Husband counters by pointing to *Plaatje,* in which the Supreme

Court analyzed a post-divorce claim for future military retirement benefits not distributed at the dissolution of marriage. In *Plaatje*, the Supreme Court applied the four-year "catch-all" statute of limitations in Section 37–1–4 to bar the plaintiff's action for personal property. *Plaatje*, 95 N.M. at 790, 626 P.2d at 1287. In this case, Husband successfully argued that because the four-year statute of limitations applied to personal property in *Plaatje*, it must be applied to this action for accounting and partition of real property. For the reasons that follow, we disagree with the application of a four-year statute of limitations to this action pertaining to real property.

{16} Under Section 40–4–20(A), failure to divide property upon divorce "shall not affect the property rights." In addition, the statute explicitly permits actions to divide omitted community property, and it contains no language limiting such actions. Thus, without looking beyond the statutory language, it would appear that a party may bring an action under Section 40–4–20(A) at any time. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating that plain language of statute is primary indicator of legislative intent); *see also* 2 Valuation & Distribution of Marital Prop. (MB) § 41.06[1][b][i] (March 2002) ("[A] community property asset that has never been distributed by a court or the parties' agreement remains in the co-ownership of the spouses.... The property sits patiently awaiting division.").

{17} Nevertheless, *Plaatje* imposed a statute of limitations in a case involving personal property on the basis that the legislature must not have intended the potential injustice that might occur if, for example, a wife could "bring an action against her former husband or against his estate 20 or 30 years after the divorce." 95 N.M. at 790, 626 P.2d at 1287. The Supreme Court therefore applied a four-year statute of limitations. *Id.* Contrary to Husband's arguments, however, this case is distinguishable from *Plaatje*.

{18} *Plaatje* specifically refers to "suits to divide personal property." *Id.* The distinction between personal and real property is crucial because tenants in common in real property enjoy special protections under the law. *See In re Estate of Duran*, 2003–NMSC–008, ¶ 31, 133 N.M. 553, 66 P.3d 326 (noting that the law imposes on a cotenant a heightened standard for establishing adverse possession against another cotenant). In addition, "[s]ince a cause of action for partition is a continuing one while the cotenancy exists, there generally is no limitations period for bringing a petition for partition." 59A Am.Jur.2d *Partition* § 80 (2003). Moreover, "[t]he right to partition is an inherent element of the tenancy in common.... To deny it is to effectively expand the property rights of one cotenant at the expense of other cotenants." 7 Richard R. Powell & Michael Allan Wolf, *Powell on Real Property* § 50.07[3][a] (2000).

{19} These authorities teach us that the status of the tenancy in common held by Wife upon divorce described her existing title to the property at issue, which is title she continues to enjoy to the present time. There is nothing about the bare holding of title that should equate to the accrual of a cause of action that triggers a time limitation on the right to seek partition. Indeed, she would be subject to a limitations period only if her cotenant did "something which amounts to an ouster." *In re Estate of Duran*, 2003–NMSC–008, ¶ 18, 133 N.M. 553, 66 P.3d 326 (internal quotation marks and citation omitted). We find persuasive the logic expressed by our sister state, Arizona, that the application of a four-year statute of limitations effectively requires tenants in common "to file an action for partition within four years of the initiation of the joint ownership or lose the opportunity to ever obtain partition," a situation the Arizona court viewed as untenable. *See Occhino v. Occhino*, 164 Ariz. 482, 793 P.2d 1149, 1151 (Ariz. Ct.App.1990). We therefore hold that the four-year statute of limitations in Section 37–1–4 does not apply to an action for accounting and partition of real property. Rather, the trial court must analyze a post-divorce action to partition real property in the same fashion as any partition action by a tenant in common. *See Mendoza v. Mendoza*, 103 N.M. 327, 333, 706 P.2d 869, 875 (Ct.App. 1985) ("In addition to the authority invested

in the district court under Section 40–4–20, specific statutory authorization may be invoked by a party seeking partition of real estate held as tenants in common[.]"). The resolution of such actions remains guided by the principle that cotenants generally have a right to partition, *Martinez v. Martinez*, 98 N.M. 535, 539–40, 650 P.2d 819, 823–24 (1982), and yet at the same time the trial court has the right to determine "the equities as between the parties." *Mendoza*, 103 N.M. at 333, 706 P.2d at 875; *see also* NMSA 1978, § 42–5–1 (1907) (permitting a complaint for partition by interested parties "if it shall appear that partition cannot be made without great prejudice to the owners").

{20} While we reverse summary judgment in favor of Husband, our holding does not go very far toward resolving matters between the parties. The parties dispute whether the property at issue was in fact community property. Husband admitted that it was community property for purposes of his motion for summary judgment, but this remains a potential issue subject to proof on remand. In addition, the parties dispute whether the property was divided in the divorce, and this may be a bone of contention on remand. If the fact finder concludes that the divorce decree (which is not part of the record on appeal) divided the property, our discussion regarding partition—and the absence of a statute of limitations governing partition—does not apply.

**Whether the Claims Are Barred by the Doctrine of Laches**

{21} Husband argues that if Wife's action is not barred by a statute of limitations, then it is barred by the doctrine of laches. The doctrine of laches contains the following elements:

(1) Conduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy;

(2) delay in asserting the complainant's rights, the complainant having had knowl-

edge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit;

(3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which [she] bases [her] suit; and

(4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.

*Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). Whether this doctrine applies cannot be determined at this stage in the proceedings because the undisputed facts do not support the second element. Wife argues, and we agree, that her acknowledgment of a possible interest in the property does not fully resolve the factual issue of whether she had knowledge or notice of Husband's conduct. In particular, it is unclear whether Wife had knowledge that Husband used community funds to purchase the Taos property, which is a factual question that remains disputed on appeal. If he did not, then Husband may be able to rebut the presumption that the Taos property was community property. In any event, whether laches properly applies depends on the trial court's resolution of disputed facts.

**CONCLUSION**

{22} For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

{23} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and LYNN PICKARD, Judge.