**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-013

Filing Date:  December 15, 2009

Docket No. 28,486

BENAE FRANCINE GILMORE
n/k/a/ BENAE FRANCINE ROCHIN,

      Petitioner-Appellee,

v.

EDWIN JAMES GILMORE,

      Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY
James T. Martin, District Judge

Atkinson & Kelsey, P.A.
Patrick L. McDaniel
Albuquerque, NM  87190

for Appellee

Kretek Law Office, LLC
Charles C. Kretek
Deming, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**     This case involves the division of  retirement benefits between Benae Francine Gilmore (Wife) and Edwin James Gilmore (Husband) under a State of New Mexico defined benefits plan.  A California court granted the parties' divorce through a default judgment in 1994 and issued a qualified domestic relations order (the QDRO) in 2006 awarding Wife a portion of the benefits under a formula that was based on the time-rule method of calculating Wife's community share.  After the California court set aside its 1994 judgment as to all its

1

provisions except the portion dissolving the marriage and also set aside the QDRO in its entirety for lack of personal jurisdiction, Wife sought to divide the retirement benefits in New Mexico pursuant to NMSA 1978, Section 40-4-20 (1993), which allows post-divorce division of undivided community assets. Under the impression that New Mexico required the use of the time rule and therefore using that formula, the district court divided the benefits and rejected Husband's various affirmative defenses. We hold that the district court did not err in rejecting Husband's affirmative defenses. Because New Mexico does not require or automatically use the time rule as a default method to divide retirement benefits when the parties do not agree to a specific method, we reverse the court's use of the time rule and remand for further proceedings consistent with this opinion.

**BACKGROUND**

**{2}** The parties were married on October 6, 1981. In October 1984, Husband began employment as a police officer with the City of Deming, New Mexico, and remained in this position through the duration of the marriage. As a state employee, Husband was eligible to participate in the state's defined benefit retirement plan administered by the Public Employees Retirement Association of New Mexico (the PERA administrator) under the Public Employees Retirement Act (the PERA). NMSA 1978, §§ 10-11-1 to -142 (1987, as amended through 2009). Husband filed for divorce in New Mexico sometime in 1994, but on June 9, 1994, the Superior Court of California, County of Yuba, where Wife had filed for divorce in 1991, granted Wife a divorce through a default judgment. It appears that when the New Mexico court was notified of the California divorce, Husband's divorce action was dismissed.

**{3}** In January 1999, Husband was hired by the Luna County, New Mexico, Sheriff's Department as an undersheriff, where he received an increase in salary. In 2000 Husband became the director of the Luna County Detention Center, which resulted in a significant increase in salary and in the value of Husband's retirement benefits under the PERA (PERA benefits). Husband remarried in 2001 and divorced in January 2005 by a decree that included a $15,000 lump-sum payment to that wife for her share of the community interest in Husband's PERA benefits. Husband retired in March 2005 and began receiving PERA benefits on April 1, 2005.

**{4}** Wife obtained the QDRO in June 2006 from the Superior Court of California dividing Husband's PERA benefits. However, in October 2006, upon Husband's motion, that same California court set aside its 1994 judgment as to all its provisions except the portion dissolving the marriage and also set aside the QDRO in its entirety for lack of personal jurisdiction over Husband. In February and March 2007, Wife filed a motion and

2

an amended motion in the Luna County District Court to divide the PERA benefits under Section 40-4-20.[1] Section 40-4-20(A) provides:

> The failure to divide or distribute property on the entry of a decree of dissolution of marriage or of separation shall not affect the property rights of either the husband or wife, and either may subsequently institute and prosecute a suit for division and distribution or with reference to any other matter pertaining thereto that could have been litigated in the original proceeding for dissolution of marriage or separation.

**{5}** In his September 2007 response to Wife's motions, Husband challenged subject matter jurisdiction and raised the affirmative defenses of res judicata, laches, statute of limitations, estoppel, waiver, forfeiture, federal preemption, and public policy. Husband also counterclaimed that the QDRO was obtained under false allegations and requested the court to order Wife to pay him back the money she received under the QDRO and also to pay Husband's attorney fees. The district court heard the matter on October 2, 2007.

**{6}** At the October 2007 hearing, Wife testified about the prior legal proceedings in California that (1) Husband was mailed a copy of the divorce decree, (2) even when she had rejected Husband's lump-sum settlement offers it was never her intent to waive her rights to the retirement, and (3) she had worked and helped Husband get started. Husband testified that he had offered Wife a lump-sum payment and that, although he could pay it over time, he did not have the ability to pay a lump sum at the time of the October 2007 hearing. He also testified that Wife was entitled to benefits based on what Husband was earning at the time of the divorce and that he was entitled to benefits based on his post-divorce earnings increases.

**{7}** On December 13, 2007, the district court entered orders denying Husband's affirmative defenses and counterclaims and dividing the PERA benefits. The court determined that it had subject matter jurisdiction to divide the PERA benefits under Section 40-4-20. Further, the court found, for the purpose of calculating arrearages due, that Wife had an interest in Husband's PERA benefits "based on the . . . number of years credited service during the marriage, the total number of years of credited service, and the qualifying salary levels under the PERA statute." Accordingly, the court calculated that Wife was entitled to a community share of $1025.90 per month based on one half of Husband's gross monthly pension payments of $4351.66 times the ratio of time of credited service during the marriage (9.66 years) divided by the total time of credited service (20.5 years). The court granted Wife a judgment for "arrearages for twenty-nine months . . . through December[] 2007, with the monthly amount of the arrearages to be determined by [the] PERA in

---

[1] The parties and the district court in this case treat these motions as instituting a suit as indicated in Section 40-4-20. For this reason, we refer to this process as "Wife's action" in this opinion even though it was initiated by a motion.

3

conformity with their policies and formulas" and ordered Husband, commencing October 1, 2007, to pay the arrearage payments directly to Wife by the first of each month "in the amount to be determined by [the] PERA, with the monthly amount of the arrearage payments to be determined by [the] PERA in conformity with their policies and formulas."

{8}     The district court rejected Husband's affirmative defenses of laches, estoppel, waiver, and forfeiture because Wife "pursued her claim in California and New Mexico and [Husband] has not been prejudiced." With respect to Husband's res judicata defense, the court found that "no valid order from California or any other state has divided the PERA retirement." With regard to Husband's statute of limitations defense, the court found that Wife's "claim lies within the statute of limitations period required by New Mexico law." The court denied Husband's public policy argument because the public policy of New Mexico is that "community assets should be divided." Finally, the court denied Husband's counterclaims for the amounts paid to Wife under the QDRO and for attorney fees. Husband filed a motion to reconsider and a brief in support of that motion. On March 6, 2008, the court set the motion for hearing, and on March 11, 2008, after the motion to reconsider was automatically denied by operation of law, Husband appealed. On appeal, Husband argues that the district court erred by concluding it had subject matter jurisdiction and failing to apply the statute of limitations to bar Wife's claim; by not allowing him to make a lump-sum payment to Wife; by denying Husband's affirmative defenses of laches, equitable estoppel, and waiver by acquiescence; and by not valuing his retirement benefits as of the time of the divorce, thereby improperly apportioning to Wife post-divorce benefits increases that he contends were his separate property.

**DISCUSSION**

**A.     Subject Matter Jurisdiction**

{9}     Husband contends that the district court lacked subject matter jurisdiction for two reasons. First, Husband argues that Section 40-4-20 applies to undivided assets and, therefore, the statute cannot confer jurisdiction in the present case because the PERA benefits were previously divided in the California divorce and were actually distributed based on the QDRO. Second, Husband relies on *Lewis v. Lewis*, 106 N.M. 105, 111, 739 P.2d 974, 980 (Ct. App. 1987), and argues that it holds that undivided community property divided pursuant to Section 40-4-20 must be divided in an action other than the original divorce action. Husband further argues that because he had initiated a divorce action seeking division of assets in New Mexico in 1994, Wife's present action "cannot be considered independent." We view these arguments as raising pure legal issues that we review de novo. *Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, ¶ 24, 136 N.M. 630, 103 P.3d 554.

{10}    Husband specifically shows that the California decree of divorce of 1994 included a provision that divided the PERA benefits and awarded Wife one half of Husband's PERA benefits with the City of Deming. Furthermore, Husband shows that the same California

4

court later issued the QDRO. Even though the provision of the California decree dividing the retirement and the QDRO were subsequently set aside, Husband reasons that Wife "sought to and did divide [Husband's] PERA retirement benefit." Husband also points to his earlier New Mexico proceeding in which he sought to divide assets and debts. Thus, Husband argues, the district court in the present case erred in determining that it had subject matter jurisdiction because the PERA benefits were already divided. We are not persuaded and conclude that the district court had subject matter jurisdiction to hear this case under Section 40-4-20.

**{11}** As to Husband's argument that the PERA benefits were not an undivided asset, the California court recognized its own lack of personal jurisdiction to divide the benefits and set aside all the provisions of its 1994 default judgment, except the portion dissolving the marriage. It also set aside the QDRO in its entirety. The California court order dividing the PERA benefits was without force or effect since that court lacked jurisdiction to make any division. *See Ortiz v. Shaw*, 2008-NMCA-136, ¶ 17, 145 N.M. 58, 193 P.3d 605 (stating that a default judgment where a district court lacks personal jurisdiction in an in personam action is void). The PERA benefits were therefore an undivided asset when Wife sought to divide them in the 2007 New Mexico action.

**{12}** Husband's argument that Wife's action is not an independent action is also without merit. Citing *Zarges v. Zarges*, 79 N.M. 494, 445 P.2d 97 (1968), the *Lewis* Court concluded that "property divided pursuant to Section 40-4-20 must be divided in an independent action." *Lewis*, 106 N.M. at 111, 739 P.2d at 980 (emphasis omitted). In *Zarges*, our Supreme Court dealt with a situation in which the wife, instead of filing a complaint to start a different lawsuit under the equivalent of Section 40-4-20, sought to reopen the divorce action to divide community property twenty months after the action was finalized. *Zarges*, 79 N.M. at 494-97, 445 P.2d at 97-100. In reversing the district court's decision to divide the community property under these circumstances, the Court noted that to allow the wife to "breathe new life into" the divorce action where the district court had exhausted its jurisdiction would require "that we either relax our holdings concerning termination of jurisdiction . . . or that we disregard the rules and statutes applicable to commencement of actions." *Id.* at 496-97, 445 at 99-100. We determine that the present case is an independent action under Section 40-4-20. This matter is an altogether different case than the California divorce and Husband's 1994 New Mexico divorce proceeding.

**B.      Statute of Limitations**

**{13}** Husband contends that the district court erred in concluding that Wife's action was not barred by the four-year statute of limitations in NMSA 1978, Section 37-1-4 (1880). Where facts relevant to a statute of limitations are undisputed, the standard of review is whether the court correctly applied the law to the undisputed facts. *State v. Kerby*, 2007-NMSC-014, ¶ 11, 141 N.M. 413, 156 P.3d 704; *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 8, 132 N.M. 459, 50 P.3d 554 (noting that "[w]e review de novo whether a particular

statute of limitations applies"). We review questions of law de novo. *Kerby*, 2007-NMSC-014, ¶ 11.

**{14}** Husband argues that the relevant date to commence a lawsuit to divide retirement benefits for statute of limitation purposes is the date of divorce regardless of vesting or maturation because, as stated in several New Mexico cases, the right to divide retirement benefits arises at the time of divorce. *See, e.g.*, *Copeland v. Copeland*, 91 N.M. 409, 412-13, 575 P.2d 99, 102-03 (1978) (holding that vested retirement rights earned during the marriage are a community asset subject to division at time of divorce, even though the husband has not yet retired); *see also Ruggles v. Ruggles*, 116 N.M. 52, 58, 860 P.2d 182, 188 (1993) ("In *Hurley* [*v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980), *overruled on other grounds by Ellsworth v. Ellsworth*, 97 N.M. 133, 637 P.2d 564 (1981),] we simply reaffirmed the *Copeland* principle that a spouse is entitled to his or her community share of that portion of a retirement plan which is vested but unmatured as of the date of divorce."). We reject Husband's argument.

**{15}** There are two types of divorces. A unified divorce is where "property division judgments [are] simultaneous with the divorce decree." *Lewis*, 106 N.M. at 109-10, 739 P.2d at 978-79. A bifurcated divorce is "where a partial decree of divorce is entered before the division of community property." *Id.* at 110, 739 P.2d at 979. The cases that Husband cites to support his argument that community property is to be divided according to its value on the date of divorce involve unified divorce situations. *See id.* at 109-10, 739 P.2d at 978-79. Upon entry of a partial decree in a bifurcated divorce, the undivided community property automatically changes from community property to property that the parties hold as tenants in common. *See id.* at 109, 739 P.2d at 978; *see also Jones v. Tate*, 68 N.M. 258, 262, 360 P.2d 920, 923 (1961) ("Upon the divorce of the parties[,] all community property not divided between them did not remain community property but became property which they held as tenants in common."); *In re Miller's Estate*, 44 N.M. 214, 220, 100 P.2d 908, 912 (1940) (recognizing that marital status ends simultaneously upon the signing of a divorce decree and stating that "[t]he community property becomes their property as though it had been held by them as tenants in common"). Under *Plaatje v. Plaatje*, the four-year statute of limitations in Section 37-1-4 applies to actions seeking to divide undivided community property after the divorce. *Plaatje*, 95 N.M. 789, 790, 626 P.2d 1286, 1287 (1981) (holding that the four-year statute of limitations of Section 37-1-4 applies to suits to divide personal property brought under Section 40-4-20). However, we have identified two circumstances in which the four-year statute of limitations will not apply to a division of undivided assets under Section 40-4-20, namely, when the asset consists of retirement benefits and when the asset is real property. *See Plaatje*, 95 N.M. at 790-91, 626 P.2d at 1287-88 (concluding that the wife was not barred by the four-year statute of limitations from maintaining an action against the husband for her share of retirement benefits); *Martinez v. Martinez*, 2004-NMCA-007, ¶ 18, 135 N.M. 11, 83 P.3d 298 (filed 2003) (concluding that the four-year statute of limitations does not apply to divisions of undivided real property under Section 40-4-20).

**{16}**     The reason these two types of property held by the parties as tenants in common are not subject to the four-year statute of limitations in Section 37-1-4 is because the parties have special protections under the law with regard to these types of property.  In regard to real property, the *Martinez* Court noted that "[s]ince a cause of action for partition is a continuing one while the cotenancy exists, there generally is no limitations period for bringing a petition for partition."  2004-NMCA-007, ¶ 18 (alteration in original) (internal quotation marks and citation omitted).  The *Martinez* Court concluded that because "[t]here is nothing about the bare holding of title that should equate to the accrual of a cause of action that triggers a time limitation on the right to seek partition[,] . . . [and the wife] would be subject to a limitations period only if her cotenant did 'something which amounts to an ouster,'" the four-year statute of limitations did not apply to the wife's action seeking accounting and partition of real property.  *Id.* ¶ 19 (citation omitted).  In regard to retirement benefit plans, this type of property is different than other types of personal property because the employee spouse receives the benefits in monthly installments.  *Plaatje*, 95 N.M. at 790-91, 626 P.2d at 1287-88.  The *Plaatje* Court concluded that a cause of action accrues when the installment becomes due and thus the statutory time limitation upon the non-employee spouse's "right to sue for her portion of each installment commences to run from the time each installment comes due."  *Id.*

**{17}**     Husband argues that *Plaatje* is distinguishable because in that case the husband's retirement benefits were not divided in the original divorce action, and the first time the wife asserted any claim was five years later.  In the case at hand, as Husband points out, Wife asserted her claim in her California dissolution action.  Husband argues that the California court having set aside the portions of the decree dividing the retirement and the QDRO is irrelevant to a determination regarding the statute of limitations.  Husband's argument is unclear, but it appears to be that Wife had four years to domesticate the decree in New Mexico or send it to the PERA administrator to secure her claim.  We are not persuaded.

**{18}**     Because the California division was void, it did not effectively divide the PERA benefits.  *See Ortiz*, 2008-NMCA-136, ¶ 17 (recognizing that a default judgment where a district court lacks personal jurisdiction in an in personam action is void).  Wife's action under Section 40-4-20 to divide the undivided retirement is the proper way to seek division of the benefits in this bifurcated divorce.  Because the action was instituted when Husband received the monthly installments, the cause of action accrued when each installment became due.  *See Berry v. Meadows*, 103 N.M. 761, 769-70, 713 P.2d 1017, 1025-26 (Ct. App. 1986) (citing *Plaatje* to conclude that "[t]he right to receive each monthly installment accrued when each installment became due; thus, [the] wife's right to recover her portion of each installment commences to run from the time each installment is payable").  Following the reasoning of *Plaatje*, we conclude that because Husband's PERA benefits are paid in monthly installments, Wife's right to bring an action under Section 40-4-20 to divide the undivided PERA benefits received by Husband accrued, for statute of limitations purposes, with each installment when that installment was due, rather than at the time of the divorce.  Thus, Wife's action was not barred by the statute of limitations.

7

## C.  Equitable Division of Other Assets

**{19}**    Next, Husband claims that the district court erred in not rendering an equitable division of the entire marital estate.  However, Husband never moved the court for a division of undivided community property and debts under Section 40-4-20 for either real or personal property.  The basis for Husband's argument appears to arise from exchanges in the October 2007 hearing.  At the hearing, Husband's attorney asked Wife if she had filed bankruptcy, and Wife's attorney objected as to the relevancy of the question.  In his brief in chief, Husband argues that his attorney's response to that objection was that the question was relevant because "the avoidance or discharge of marital debts by [Wife] in any bankruptcy proceeding is relevant and material to a determination of the marital estate and in determining the property kept by and debts assumed by the parties and in the absence of such evidence, no equitable division of the marital estate, including an equitable division of the community interest in [Husband's] PERA retirement benefits could be rendered by the [d]istrict [c]ourt."  Thus, Husband concludes, the court's sustaining of the objection "further prohibited [him] from pursuing questions regarding the community debts and assets of the parties."  A review of the October 2007 hearing reveals that the exchange went specifically as follows.

> Mr. Kretek:  Okay.  Have you ever filed a bankruptcy, Ms. Rochin?
>
> Wife:  Yes, I did . . . .
>
> Mr. McDaniel:  Objection, relevance.
>
> Mr. Kretek:  Your honor it's relevant, she didn't claim [the retirement] as an asset and now she is claiming it is something she never intended to give up.
>
> Mr. McDaniel:  That would not constitute waiver under law in any case your honor.
>
> . . . .
>
> Mr. McDaniel:  Your honor that, that's irrelevant it wouldn't count, it . . . definitely relates to any of these so called affirmative defenses, it wouldn't as a matter of law constitute a waiver in any case.
>
> Court:  Objection sustained.
>
> Mr. Kretek:  Okay.  That's all I have your honor.

This exchange came up in a "waiver of rights" context as suggested by Husband's counsel's response to Wife's counsel's objection.  Husband's counsel is essentially indicating that

Wife's answer would show she intended to give up the retirement since it was not claimed as an asset in the bankruptcy.

{20} We see nothing to indicate that Husband was seeking equitable division of other undivided community assets during this exchange. We conclude that Husband did not seek a division of undivided assets at the October 2007 hearing and cannot now complain that the district court's ruling erroneously denied Husband the right to have the undivided assets divided. Thus, the only issue properly before the district court was the division of the PERA benefits requested by Wife.

**D.      Lump Sum Versus Pay As It Comes In**

{21} Husband argues that once the district court determined the value of Wife's interest in the PERA benefits, the proper way to have divided the benefits was a lump-sum payment. Whether the correct law has been applied and whether the district court accurately applied the law to the facts are reviewed de novo. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 6, 140 N.M. 879, 149 P.3d 976 (filed 2006).

{22} Husband contends that under *Ruggles*, the proper manner of dividing the community interest in a party's retirement benefits is to value, divide, and distribute the interest through a lump-sum payment. In *Ruggles*, our Supreme Court indicated that the preferred method to distribute retirement benefits upon divorce is to "value, divide, and distribute them (or other assets with equivalent value) to the divorcing spouses" as a lump-sum payment. 116 N.M. at 54-55, 860 P.2d at 184-85. The Court also discussed some of the disadvantages of the pay-as-it-comes-in method of distribution; nevertheless, the Court acknowledged that under some circumstances, when the lump-sum method is not possible or practicable, other methods, including the pay-as-it-comes-in method, may be utilized. *Id.* "One such occasion will arise when the court has no satisfactory evidence upon which to make a finding of present value. Another will relate to the parties' financial circumstances: If there are no other assets, or insufficient assets, or unsuitable assets, with which to satisfy (or secure) a lump[-]sum distribution, the court may be forced to award the non[-] employee spouse's share as it comes in." *Id.* at 67, 860 P.2d at 197 (internal quotation marks omitted).

{23} In the instant case, the only evidence before the district court was that Husband had offered to buy out Wife through a $5000 lump-sum payment, but that he did not have the ability to pay a lump sum at the time of the October 2007 hearing and would have to pay it over time. Under these circumstances, the district court did not abuse its discretion by awarding Wife her share of the PERA benefits under a pay-as-it-comes-in method.

**E.      Laches, Equitable Estoppel, and Waiver by Acquiescence**

{24} Husband argues on appeal that the district court erred by denying his laches, equitable estoppel, and waiver-by-acquiescence defenses. He argues that there was sufficient evidence to support these affirmative defenses. The district court rejected these

affirmative defenses because Wife "pursued her claim in California and New Mexico and [Husband] has not been prejudiced." Husband had the burden of proof on these defenses. *See J.A. Silversmith, Inc. v. Marchiondo*, 75 N.M. 290, 294, 404 P.2d 122, 124 (1965) ("[I]t is well settled that the party alleging the affirmative has the burden of proof."). "We review a trial court's decision to grant or deny equitable relief for abuse of discretion. Where the court's discretion is fact-based, we must look at the facts relied on by the trial court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence." *Vigil v. Fogerson*, 2006-NMCA-010, ¶ 56, 138 N.M. 822, 126 P.3d 1186 (filed 2005) (internal quotation marks and citations omitted). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. The evidence is viewed in the light most favorable to the ruling of the district court. *See Berry*, 103 N.M. at 769, 713 P.2d at 1025.

**{25}** The elements of laches are:

> (1) conduct on the part of another which forms the basis for the litigation in question; (2) delay in the assertion of the complaining party's rights; (3) lack of knowledge or notice on the part of the defendant that the complaining party would assert such rights; and (4) injury or prejudice to the defendant in the event relief is accorded to the complaining party or the suit is not barred.

*Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶ 35, 133 N.M. 373, 62 P.3d 1255 (filed 2002) (internal quotation marks and citation omitted).

**{26}** To establish equitable estoppel, Husband was required to show:

> (1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

*Mannick v. Wakeland*, 2005-NMCA-098, ¶ 29, 138 N.M. 113, 117 P.3d 919 (filed 2004) (alteration in original) (internal quotation marks and citation omitted), *aff'd but criticized by Coppler & Mannick, P.C. v. Wakeland*, 2005-NMSC-022, 138 N.M. 108, 117 P.3d 914.

**{27}** Waiver by acquiescence may arise "where the evidence shows the existence of an agreement . . . supported by consideration, and where the agreement has been acquiesced in over a period of time under circumstances giving rise to estoppel." *Sisneroz v. Polanco*, 1999-NMCA-039, ¶ 12, 126 N.M. 779, 975 P.2d 392 (omission in original) (internal quotation marks and citation omitted). Furthermore, an enforceable waiver cannot be

inferred absent proof of an express agreement except where there are unequivocal acts or conduct showing an intent to waive. *Id.* ¶ 13. "[I]n no case will a waiver be presumed or implied . . . unless, by his conduct, the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to." *Id.* (internal quotation marks and citation omitted).

**{28}** We will discuss each of these defenses separately; however, we note that the following evidence is relevant with regard to each of the defenses. At the October 2007 hearing, Husband testified that on one occasion, around the time of his subsequent divorce, Wife was angry and told him that "she didn't want any money of that damn retirement." To show his unawareness that Wife would assert a claim for a share of the PERA benefits after Wife's alleged statement, Husband relies on his decision to pay a lump sum of $15,000 to his subsequent wife for her share of the community interest based on the full value of the pension. Husband also testified that after Wife had told him she did not want any of the retirement, he attempted further settlement negotiations with Wife before his retirement. Finally, Husband asserts he was prejudiced by being "forced" to choose Option A under the PERA, which paid the maximum monthly payments, due to Wife's "failure to perfect her claim." Alternatively, Husband could have selected Options B or C, which pay less but allow the member to designate a survivor beneficiary and are only available to members with spouses or former spouses. Husband also asserts prejudice due to his paying his subsequent wife for her share of the community interest based on the full value of the pension without accounting for a subsequent claim by Wife.

**{29}** On the other hand, Wife testified that she pursued her interest in the retirement as soon as she thought she could when Husband retired. She testified that between 2005 and 2007 she rejected Husband's offers to settle for a lump-sum payment of $5000 or $200 per month. Wife also testified that she never engaged in negotiations with Husband or his attorney in terms of waiving her interest in the PERA benefits, that she did not sign anything waiving her interest, and that it was never her intent to waive her marital interest in the PERA benefits.

## 1.     Laches

**{30}** Based on Wife's testimony that she asserted her rights as soon as Husband retired, there was sufficient evidence for the district court to find that delay in the assertion, the second element of laches, was not met. Moreover, Husband does not cite any New Mexico or any other authority indicating that Wife was required to send a copy of the California decree to the PERA administrator or domesticate the California divorce in New Mexico within a certain amount of time in order "to secure her interest." Also, Wife testified that she rejected Husband's offers to settle for a lump sum or $200 per month, and Husband testified that he continued to try to settle with Wife even after her alleged statement giving up her right to the retirement around the time of Husband's subsequent divorce, which would allow the district court to reasonably find that Husband did not lack knowledge that Wife would pursue her interest in the retirement at the time Husband retired. The court could

11

conclude that Husband did not show lack of knowledge or notice on his part that Wife would assert her rights to meet the third element of laches. We do not reach whether there was sufficient evidence for the district court's finding that there was no prejudice because Husband failed to prove the second and third elements of laches. *See Thomas v. Pigman*, 77 N.M. 521, 522-23, 424 P.2d 799, 800 (1967) (affirming the district court's denial of a laches defense because the defendant failed to prove two out of the four elements of laches); *see also Letson v. Liberty Mut. Ins. Co.*, 523 F. Supp. 1221, 1225 n.5 (D.C. Ga. 1981) ("Since there was no delay, the issue of prejudice to the defendant is moot.").

## 2.      Equitable Estoppel

**{31}**     As to the first element of equitable estoppel, conduct that amounts to a false representation or concealment of material facts, Husband argues that because Wife stated she did not want any of his retirement and she ignored Husband's attempts to negotiate a settlement, Wife "falsely represented [her] secret intent to assert her claim." Wife having obtained the QDRO without giving him proper notice, Husband argues, is further evidence of Wife's undisclosed intent to assert her claim to the PERA benefits despite her alleged statement and actions that she did not want any of the benefits.

**{32}**     With regard to the second element of estoppel, intention or at least expectation that such conduct shall be acted upon by the other party, Husband argues that not only did Wife have exclusive knowledge of her intent to pursue a claim, but "she went to great lengths to hide that knowledge from [Husband]." Husband further argues that the QDRO, without proper service, notice, or his advance knowledge, supports this point. Finally, as to the third element of estoppel, knowledge, actual or constructive, of the real facts, Husband contends that Wife not only should have known but in fact knew that Husband was relying on her statement. Husband notes that Wife knew about his subsequent divorce and that he was going to have to buy his subsequent wife out of his retirement. Because Wife had already told him that she did not want any of the retirement, Husband argues, she should have known that he would rely on that when paying out a lump sum to his subsequent wife. Husband also argues that Wife was informed, shortly after his subsequent divorce, that he would be retiring and she did not assert her claim until after she obtained the QDRO.

**{33}**     The district court concluded that Wife had pursued her claim in California and New Mexico and that Husband had not been prejudiced. Based on the evidence before the court that Wife did not intend to give up her rights, that she asserted her rights as soon as she thought she was allowed to do so, that she rejected Husband's settlement offers, and that she received payments only after Husband had already began receiving his installments, there was sufficient evidence for the court to find that estoppel did not bar Wife from asserting her claim.

## 3.      Waiver by Acquiescence

12

**{34}**   Husband argues that because Wife took no action to assert her claim to the retirement from 1994 until 2006, made statements that she would not be asserting her claim, and ignored or rejected all of Husband's settlement offers, she waived her rights to the retirement.  An enforceable waiver cannot be inferred absent proof of an express agreement except when unequivocal acts or conduct showing an intent to waive are shown.  *Sisneroz*, 1999-NMCA-039, ¶ 13.  In no case will a waiver be presumed or implied unless Wife's actions misled Husband "to his prejudice, into the honest belief that such waiver was intended or consented to."  *Id.*  (internal quotation marks and citation omitted).

**{35}**   Here, there was sufficient evidence to support the district court's conclusion that Wife did not waive her rights to the PERA benefits.  Wife testified that she rejected Husband's offers to settle for a lump-sum payment of $5000 or $200 per month.  As mentioned earlier in this opinion, Wife also testified that she never engaged in negotiations with Husband or his attorney in terms of waiving her interest in the PERA benefits, that she did not sign anything waiving her interest, and that it was never her intent to waive her marital interest in the PERA benefits.  Moreover, the district court was free to disbelieve that Husband honestly relied on Wife giving up her interest under the circumstances in which she stated that "she didn't want any money of that damn retirement," when Husband continued his attempts to settle with her even after the alleged statement.  *See Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 33, 143 N.M. 215, 175 P.3d 309 (holding that questions of credibility are reserved for the district court as fact finder).  We conclude that the district court did not err in its conclusion that Wife did not waive her rights to the PERA benefits.

## F.   The Issue of How to Calculate Retirement Benefits

**{36}**   Husband argues that the district court's determination that Wife was entitled to a share of Husband's PERA benefits based on his 2005 salary and benefit level rather than on his 1994 salary and benefit level was erroneous because it unfairly awarded Wife a portion of Husband's separate post-divorce increases.  Because in New Mexico, absent an agreement regarding calculation of benefits, there is no set rule for determining every case involving the division of retirement benefits, it appears that the district court is to exercise its wisdom, sound reasoning, and sound discretion to divide this asset.  *See Copeland*, 91 N.M. at 413, 575 P.2d at 103 (recognizing that "[t]here can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion" (internal quotation marks and citation omitted)).  We may characterize a discretionary decision "premised on a misapprehension of the law" as an abuse of discretion.  *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted).  "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo."  *Id.* (internal quotation marks and citation omitted).

**{37}**   The record reflects that the district court was evidently under the impression that the PERA required the use of what is known as the time rule.  When Wife rested her case in the

13

October 2007 hearing, Husband's counsel requested that Wife's motion be dismissed, but the court denied the request and added, "I think there is sufficient evidence in the record to establish during the course of the marriage he worked for the Deming Police Department and accumulated a retirement, PERA, as to the value of that retirement it is to be subject to a mathematical calculation under the PERA rules, which is number of years of the marriage, and number of years total worked, or total years of contributions." In its findings at the end of the October 2007 hearing, the court ordered a qualified domestic relations order to be entered "in accordance with the rules established by [the] PERA, which established that the retirement will be divided by formulation taking into account the number of years of marriage between the parties, and the total number of years served by [Husband] under the state retirement plan, and that [Wife] would be entitled to fifty percent of that formulated percentage." The court's impression is understandable given Wife's counsel's representations that the PERA required the time rule to be used.

**{38}** In his opening statement, Wife's counsel mentions that the California "PERA order was entered consistent with New Mexico law." He told the court that the California default judgment was "in accordance with New Mexico law, and it would have been in accordance with California law had there been jurisdiction." He stated that he worked with the PERA to "make sure that this was an appropriate order," which he based on the one that had previously been entered; that "the calculation was actually performed using the time rule, that is the formula in use in [the] PERA"; and that when the QDRO "was approved and entered by [the] PERA, they calculated based on their formula, and this is a statutory formula." In closing, Wife's counsel stated that his draft of a PERA order was actually approved by the PERA administrator and that he "double checked with them and they did want the formula approach in there rather than calculation."

**{39}** When Wife's counsel told the court that Wife's share of Husband's monthly payments should be $1025.90, Husband's counsel protested by asking, "That's the time calculation . . . correct?" He also asked, "there are two approaches, and you are saying [the] PERA preferred the time approach?" Wife's counsel replied, "That's their calculation using the time rule." Wife's counsel further stated that "it would come out to the same thing, but this is their calculation." After this exchange, the court simply stated, "I'm using the time rule." During the hearing, there was no discussion about the fact that the PERA has no rule and there is no law requiring use of the time rule, or that pursuant to the PERA, there existed instructions for lawyers to use in drafting benefits division-related documents and that those instructions merely indicated that the time rule was a possible formula or methodology that could be considered. *See* PERA, *Attorney Instructions: Model Order Dividing PERA Retirement Benefits*, at 3-4, available at http://www.pera.state.nm.us/forms/AttyInstOrderDivPERABen.pdf.[2]

---

[2] On June 11, 2009, this model order with instructions was available on-line at http://www.pera.state.nm.us.

14

**{40}** The time rule is a method for calculating a non-employee spouse's share of a retirement plan. "The time-rule calculation first takes the number of months that [the employee spouse] was participating in the plan during marriage and divides that number by the number of total months of employment during which [the employee spouse] was covered under the plan. The result of that calculation is then multiplied by the total amount of retirement benefits and then that number is divided by two." *English v. English*, 118 N.M. 170, 176, 879 P.2d 802, 808 (Ct. App. 1994). The "ratio of community service years to total service years is multiplied against the amount of benefit the participant receives at retirement . . . even though that date may be after the divorce." Thomas C. Montoya, *N.M. Domestic Relations Law and Forms* (1st ed., Lexis Law Publishing 1997) (1996) at § 7.114 (emphasis omitted).

**{41}** Jurisdictions that follow the time rule reason that post-divorce increases are built on the marital foundation. *See Gemma v. Gemma*, 778 P.2d 429, 431 (Nev. 1989) (stating that courts that follow the time rule reason that "early contributions to the pension plan, while smaller, are invested and earned more interest, that the emphasis should be on the qualitative nature of the community interest as opposed to the quantitative interest, and that the early working periods are the building blocks to upward mobility and hopefully an increased salary"). Application of the time rule "appears to work appropriately in a limited situation" where: "(1) the benefit holder was married at the inception of the benefit plan participation, and (2) the benefit holder experiences only standard inflation raises and promotions throughout the benefit plan participation." Michelle Adams Thuillier, Comment, *Divorce and Defined Benefit Plans: Retiring Twenty-Five Years of Unjust Division in Berry v. Berry*, 49 S. Tex. L. Rev. 753, 770 (2008). The following hypothetical illustrates the unfairness of applying the time rule in certain situations.

> [A]ssume a benefit holder begins his or her professional career as a single person, then, after several years, marries for a couple of years before divorcing and remaining single until retirement. Under the time rule, this short marital period of a couple of years will count as a marital foundation for the future success of the benefit holder and the value of the benefit plan. In reality, the benefit holder's foundation was built as a single person. The time rule's disregard for this fact results in an infringement on the benefit holder's separate property because it allows the non-benefit holder to share in a fraction of the benefit holder's inflated, post-divorce, separate property success.

*Id.* at 770-71 (footnotes omitted). Along the same lines, attorney instructions provided along with the PERA model order note that "[i]t is not advisable to use [the time-rule method] if the marriage was of relatively short duration, especially if the marriage and divorce occurred very early in the member's career." PERA, *supra*, at 4 (emphasis omitted).

**{42}** However, contrary to what appears to have been the district court's impression, the PERA does not mandate that any specific formula must be used. Rather, the PERA merely

15

indicates that a formula determined by a court may be submitted as part of a court order. Section 10-11-136 states, in part:

> A court of competent jurisdiction, solely for the purposes of effecting a division of community property in a divorce or legal separation proceeding, may provide by appropriate order for a determination and division of a community interest in the pensions or other benefits provided for in the [PERA]. In so doing, the court shall fix the manner in which warrants shall be issued, may order direct payments to a person with a community interest in the pensions or other benefits, may require the election of a specific form of payment and designation of a specific survivor pension beneficiary, refund beneficiary or survivor pension beneficiary.

Attorneys drafting orders for division of PERA benefits can request a model order with instructions. *See* 2.80.1600.10(C) NMAC (2001). The instructions indicate in bold typeface that the two sample division methods set out in the instructions are not required by the PERA, that "[i]t is up to the parties or the court to arrive at a method to be applied to the particular case," and, also in bold typeface and in all capital letters, that the time-rule method "is not required by statute, and is offered only as an example of a commonly used method of determining the community interest in the gross amount of pension or contributions." PERA, *supra*, at 3-4 (emphasis omitted).

**{43}** The time rule used by the PERA administrator when Wife obtained the California QDRO came from the California court; it was not required under the PERA. Although it appears that California courts have judicial discretion in selecting a method to divide retirement benefits absent an agreement by the parties, their most commonly used method is the time rule. *See In re Marriage of Adams*, 64 Cal. App. 3d 181, 187 (1976); *see also In re Marriage of Lehman*, 18 Cal. 4th 169, 187 (1998) (stating that the time rule is the most frequently employed method to apportion retirement benefits). The reasoning underlying the district court's use of the time rule in the instant case was faulty and because of that we cannot affirm the court's use of the time rule.

**{44}** Courts that use the time rule seem to be careful to attribute to the employee spouse post-divorce increases that are the result of the employee spouse's separate singular effort. *See, e.g.*, *Adams*, 64 Cal. App. 3d at 187 n.8 ("[W]e can envision an increase in benefits after separation that might be caused solely by the employee spouse's earnings. In such a case[,] it would be an abuse of discretion to give a portion of the increase to the community."). To accomplish a more equitable division under the time rule, Nevada courts afford the employee spouse an opportunity to show whether extraordinary post-divorce increases are due to his or her sole separate effort in order to determine whether the non-employee spouse is entitled to a share of those assets. *See Fondi v. Fondi*, 802 P.2d 1264, 1266 (Nev. 1990) ("[A] substantial increase in retirement benefits might be almost completely due to work or achievement after the marriage. . . . [S]uch an extraordinary increase in benefits might occur where the employee spouse attains a significantly higher-paying position while remaining

16

within the coverage of the same pension plan, either through earning a post-divorce degree, or transfer within the company to an unrelated area of service. Such a situation . . . stood in sharp contrast to the usual one, where the employee's wage increases were simply due to a rise in the cost of living, or a gradual movement up the corporate ladder." (citations omitted)). When a Nevada district court finds that the employee spouse's post-divorce increases are due to extraordinary separate effort, the court calculates a hypothetical gross monthly retirement payment that the employee spouse would have received in the absence of the extraordinary post-divorce increases. *Id.* at 1266-67. To determine this hypothetical gross monthly retirement payment, instead of using the employee spouse's actual final average salary, the court uses a hypothetical "highest income the employee spouse would have received under the normal course of events, this being ordinary promotions and cost increases." *Id.* (internal quotation marks and citation omitted). It is from this supposed gross monthly retirement payment that would have resulted if the employee spouse had only received ordinary promotions and cost increases that the court ascertains and apportions to the non-employee spouse his or her share of the benefits using the time rule. *Id.* Thus, under this Nevada approach the variable is not the fraction or ratio portion of the time rule but what average salary the court can use to determine a hypothetical monthly benefit payment.

**{45}** The *Adams* court mentions a different method to divide retirement benefits known as the "insurance apportionment rule," where the plan is divided applying "a percentage based upon the amounts paid into the fund during marriage as a percentage of total amounts paid." *See Adams*, 64 Cal. App. 3d at 186 n.6. A similar approach also appears to be suggested in the PERA model order where the non-employee spouse may receive a "[percentage] of the gross retirement benefits or contributions accrued in [the employee spouse's] name [as] community property." *See* PERA, *supra*, at 4 (stating that this method is often used if the employee spouse is retired and also "if the parties or the court determines the percentage of the total pension that will be designated as community property when the [employee spouse] retires").

**{46}** There is yet another method used by Texas courts that includes a formula that calculates the community interest by using the date of divorce as opposed to the date of retirement. *See Berry v. Berry*, 647 S.W.2d 945, 946-47 (Tex. 1983). We refer to this as the *Berry* method. Under the *Berry* method, the court is to value the interest as if the employee spouse would have retired on the date of divorce. Thuillier, *supra*, at 759-60. In order to calculate the amount of retirement benefits that the employee spouse would have received at divorce, the court uses the employee's average salary at the time of divorce. *See id.* at 760-62; *see also Berry*, 647 S.W.2d at 946-47 (concluding that "the employee's interest in [the] plan[] was community property, and that as of the date of the divorce, [the wife was] entitled to one[]half of the value" (internal quotation marks and citation omitted)). The court then calculates the non-employee spouse's share as one half of:

Benefits as if retired *at divorce*  X   time of service during marriage
                                          time of service credit *up to divorce*

17

*See* Thuillier, *supra*, at 760-62.

**{47}** Use of different approaches can significantly change the non-employee spouse's share of retirement benefits. For instance, assuming without deciding that Husband's testimony was accurate, Husband's monthly salary at the time of divorce was $1868, which would have generated monthly retirement benefit payments of $631.38. Since the entire number of years Husband participated in the plan while married and the number of years of participation until the divorce are both 9.6 years, the ratio equals one or one hundred percent. In other words, all of the benefits up until the divorce were community property. Wife would be entitled to one half of the $631.38, which equals $315.69. In contrast, because Husband earned significantly more money after divorce and to the point of his retirement, using the time rule would result in a $1025.90 monthly share for Wife.

**{48}** The issue of what formula or method of calculation to default to in a situation where, like here, there was a default divorce and the parties never agreed to a division of retirement benefits has not been decided in New Mexico. Unlike our recent opinion in *Garcia v. Garcia*, 2009-NMCA-___, ___N.M.___, ___P.3d___ (No. 28,106, Oct. 30, 2009), the district court in the present case did not even have an ambiguous agreement to interpret to attempt to arrive at an appropriate calculation of benefits. The divorce in the present case was granted through a default judgment, and the California court set aside its time-rule-based division of the PERA benefits.

**{49}** Husband relies on *Franklin v. Franklin*, 116 N.M. 11, 17, 859 P.2d 479, 485 (Ct. App. 1993), to support his position that the court should have used the date of divorce to calculate Wife's share of the PERA benefits. We have described in *Garcia* why we limit *Franklin* to its peculiar circumstances and why we did not consider it controlling in that case. *See Garcia*, 2009-NMCA-___, ¶¶ 45-48. For the same reasons, we do not think *Franklin* controls our analysis or decision in the present case.

**{50}** *Franklin* does not provide any one particular rule or formula or methodology that must be followed in instances in which the parties have not agreed to a formula or method for calculating the community share of retirement benefits. Nevertheless because of how *Franklin* resolved the calculation issue, one might argue that, at the very least, *Franklin* can be read to indicate that, absent any agreed-upon method or formula for dividing retirement benefits, the default for the court is solely to rely on evidence presented by the parties as to community and separate efforts in order to attempt to determine the non-employee spouse's community share of the employee-spouse's retirement benefits. *See* 116 N.M. at 15-19, 859 P.2d at 483-87. While to read that into *Franklin* might too severely limit the court's discretion in reaching an equitable division, *Franklin* does demonstrate that when the parties have not satisfactorily agreed to a division methodology, the court's resolution may be reached by defaulting to a division based on evidence presented by the parties from which the court can ascertain a demarcation between periods and calculations of ordinary cost of living increases and periods and calculations based on extraordinary promotions and salary increases. *See id.*

18

**{51}** In addition to *Franklin*, Husband also relies on *Madrid v. Madrid*, 101 N.M. 504, 506, 684 P.2d 1169, 1171 (Ct. App. 1984). However, Husband fails to develop his reliance on *Madrid* through any analytic detail or argument. Moreover, as we indicate in *Garcia*, *Franklin* did not see *Madrid* as controlling in pay-as-it-comes-in cases. *See Garcia*, 2009-NMCA-___, ¶ 52. Furthermore, it is noteworthy that, unlike in *Garcia* and the present case, in *Madrid* the increases in benefits came long after the husband began receiving benefits and occurred only as a result of post-divorce company-union negotiations over entitlement to retirement benefits. *See Madrid*, 101 N.M. at 505-06, 684 P.2d at 1170-71. *Madrid* does not require the court in pay-as-it-comes-in cases to limit the non-employee spouse's community share in the employee spouse's retirement benefits to an amount based on the employee spouse's average salaries and the level of benefits at divorce.

**{52}** As indicated earlier in this opinion, in *Copeland*, the Court stated that "[t]here can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion." 91 N.M. at 413, 575 P.2d at 103 (internal quotation marks and citation omitted). *Ruggles* repeated and confirmed this *Copeland* approach. *Ruggles*, 116 N.M. at 58, 860 P.2d at 188. In addition, in *Ruggles*, the Court stated that "the rule for distribution of a non[-]employee spouse's interest in a retirement plan, whatever the rule is, should be applied only in the absence of an agreement between the spouses on the subject." *Id.* at 66, 860 P.2d at 196. *Ruggles* also noted that *Franklin* "illustrates the difficulties that can arise under the reserved jurisdiction method when it becomes necessary to determine, sometimes long after the date of divorce, the amount of the non[-]employee spouse's interest in benefits when the employee spouse actually retires." *Ruggles*, 116 N.M. at 65 n.14, 860 P.2d at 195 n.14. We will not in this case attempt to provide definite guidelines by which district courts in their mandated purpose to achieve an equitable result might determine which formula or method of calculation to use in dividing benefits when the parties have not agreed to a particular formula or methodology.

**{53}** In the present case, we believe that the district court thought that the time rule was required under the PERA. It does not appear that the court engaged in analysis and exercised discretion but, instead, felt bound by what it believed was a statutory mandate. Neither statute nor case precedent in New Mexico requires or permits the time rule or, for that matter, any particular rule or method of calculation to be applied as an across-the-board or automatic-default formula or method of calculation when the parties have no agreement on how to calculate retirement benefits. It is obvious to us that when there has been no agreement of the parties and the issue is contested, unless and until our Supreme Court or Legislature decides that district courts are to default to a particular rule, formula, or methodology, it is essential for effective appellate review on the issues that the court explain why it has chosen the formula or method of calculation that it uses. It is also important that the court explain how it believes that the choice is an equitable and fair one for the parties. We therefore reverse the district court's use of the time rule and remand for the court to reassess how to calculate Wife's community interest in Husband's PERA benefits.

**CONCLUSION**

**{54}** We affirm the district court's rulings against Husband on all of Husband's affirmative defenses. We affirm the court's adoption of a pay-as-it-comes-in method of distribution instead of a lump-sum method. We reverse the district court's determination in regard to the calculation of Wife's community interest in Husband's PERA benefits and remand for further proceedings consistent with this opinion.

**{55}    IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**ROBERT E. ROBLES, Judge**

Topic Index for *Gilmore v. Gilmore*, No. 28,486

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-RM | Remand |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-AR | Affirmative Claims and Defenses |
| CP-LA | Laches |
| CP-PE | Estoppel |
| CP-TL | Time Limitations |
| CP-WA | Waiver |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-CU | Community Debts |
| DR-DM | Dissolution of Marriage |
| DR-DP | Division of Property |
| DR-RB | Retirement Benefits and Pensions |
| DR-TL | Time Limitations |
| | |
| **JD** | **JURISDICTION** |
| JD-PR | Personal |
| JD-SM | Subject Matter |