This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40033**

**JASON PRATZ,**

Petitioner-Appellee,

v.

**LACEY POTTS,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Debra Ramirez, District Court Judge**

Batley Family Law, P.A.
L. Helen Bennett
Roberta S. Batley
Albuquerque, NM

for Appellee

Lacey Potts
Portales, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}** Respondent Lacey Potts (Mother), a self-represented litigant, appeals multiple district court orders that effectively modified an existing joint custody plan of the parties' minor daughter (Child), held between Mother and Petitioner Jason Pratz (Father), and denied Mother's request for reconsideration thereof. Mother asserts multiple errors by the district court, including that (1) the court's orders were not supported by findings regarding the best interest of Child; (2) the district court's orders violate her due process rights; (3) the district court erroneously precluded her from presenting evidence; (4) the

district court judge exhibited bias and a lack of impartiality. For the reasons that follow, we affirm.

**DISCUSSION**

**I.      Determination of Best Interest of Child**

**{2}**      Throughout the proceedings in this case, the district court filed numerous orders addressing the custody arrangement for Child who was ten years old at the time of appeal. Mother's contentions on appeal center primarily on two such orders: (1) the district court's minute order following an August 2021 hearing on multiple motions filed by Mother, which adopted the report of court clinician Renee Cerami (the August minute order); and (2) the district court's memorandum order filed in response to Mother's motion requesting that the court reject Ms. Cerami's recommendations and reconsider the August minute order. Mother argues these orders are not supported by findings demonstrating that the district court's custody determinations are in the best interest of Child. To that end, Mother argues the district court should have ordered the parties to continue upholding the 50/50 timesharing arrangement the parties had agreed upon prior to the August 2021 hearing.

**{3}**      "We review a district court's child custody determination for abuse of discretion, and we will uphold the district court's findings if they are supported by substantial evidence." *Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State ex rel. Child., Youth & Fams. Dep't v. Raymond D.*, 2017-NMCA-067, ¶ 14, 404 P.3d 15 (internal quotation marks and citation omitted). "[A] court may modify a custody order only upon a showing of a substantial change in circumstances affecting the best interests and welfare of the child, and a showing that such change of circumstances has occurred since the entry of the prior custody order." *Hopkins v. Wollaber*, 2019-NMCA-024, ¶ 17, 458 P.3d 583 (internal quotation marks and citation omitted). Although "[t]he 'best interests' test is broad and vests the [district court] with considerable discretion," that discretion "must be consistent with the evidence." *Schuermann v. Schuermann*, 1980-NMSC-027, ¶ 8, 94 N.M. 81, 607 P.2d 619.

**{4}**      We initially note that this case involves only a question of *modification* of joint custody, and not a question of *termination* of joint custody. Each of the district court orders at issue in this case reiterated that the parties have joint legal custody. "[I]n a situation where the parents have joint custody, physical custody may be shared, or either parent may be designated primary physical custodian, [the status of which] is subject to change without necessarily affecting legal custody." *Hopkins*, 2019-NMCA-024, ¶ 16. Further, "legal custody does not automatically determine or establish the terms of physical custody." *Id.*; *see also* NMSA 1978, § 40-4-9.1(L)(4) (1999) ("Joint custody does not imply an equal division of the child's time between the parents."). We emphasize this distinction given Mother's stated confusion regarding whether the parties continue to share joint custody in light of the district court's orders.

**{5}** "Custodial inquiries begin with the well-established rule that once custody has been initially determined, every presumption is in favor of the reasonableness of the original decree and the burden is on the moving party to satisfy the court that circumstances have so changed as to justify the modification of custody." *Hopkins*, 2019-NMCA-024, ¶ 17 (alteration, internal quotation marks, and citation omitted). Here, the district court first determined Child's custody in a stipulated parenting plan from October 2013, in which the court established the parties as sharing joint custody, with Mother designated as the primary custodial parent. That parenting plan remained in place until July 2019, when the district court filed a stipulated order stating that the parties had agreed to a 50/50 timesharing schedule. In March 2021, Father filed a motion for an order to show cause and for immediate return of Child following Mother's relocation with Child to Portales, New Mexico. In response to Father's motion, the district court filed a minute order in May 2021 (the May minute order), requiring Mother to return with Child to Albuquerque and stating that if Mother returned to live in Albuquerque, the parties would resume their 50/50 timesharing agreement, and if Mother remained living in Portales, Child would reside in Albuquerque with Father. Mother returned Child to Albuquerque but remained living in Portales.

**{6}** Following the August 2021 hearing—at which Ms. Cerami testified for over forty-five minutes regarding her report's findings and recommendations—the district court adopted Ms. Cerami's recommendations in its memorandum order, detailing that it was in Child's best interest to enforce the district court's May minute order in which the court previously stated that Child should reside primarily with Father in Albuquerque if Mother remained residing in Portales. Ms. Cerami's testimony detailed, among other findings, her observations regarding Child's educational needs, her relationship with the parties, the parties' abilities to effectively co-parent, and the wishes of the parties and child.

**{7}** The original custodial decree in this case was the stipulated parenting plan from October 2013. Mother's subsequent relocation constituted a change in circumstances that justified modification of custody of Child, as reflected in the memorandum order. *See Hopkins*, 2019-NMCA-024, ¶ 17. Regarding Mother's assertion that the district court's orders are not supported by findings demonstrating the best interest of Child, we note that in its memorandum order, the district court found:

> The [c]ourt adopted the recommendations of the [c]ourt [c]linic because the recommendations were in the best interests of [C]hild, addressed the distance problems from Portales to Albuquerque, addressed the co-parenting issues that were adversely impacting the child and addressed all other needs of [C]hild as priorities over the needs of the parents.

The district court further stated that the evidence presented at the August 2021 hearing, did not support a 50/50 timesharing plan, explaining that if the parties' previous 50/50 custody arrangement had been "healthy," then "the parties would have been able to continue working together" under the arrangement that existed "before Mother wrongfully removed [Child] from her school and moved to another town[, which] made the 50/50 custody plan impossible."

**{8}** Under NMSA 1978, Section 40-4-9(A) (1977), "[i]n any case in which a judgment or decree will be entered awarding the custody of a minor, the district court shall, if the minor is under the age of fourteen, determine custody in accordance with the best interests of the child." The statute further specifies that the district court must "consider all relevant factors" in its best interests of the child analysis, including:

>  (1)  the wishes of the child's parent or parents as to his[ or her] custody;

>  (2)  the wishes of the child as to his[ or her] custodian;

>  (3)  the interaction and interrelationship of the child with his[ or her] parents, [their] siblings and any other person who may significantly affect the child's best interest;

>  (4)  the child's adjustment to his[ or her] home, school and community; and

>  (5)  the mental and physical health of all individuals involved.

*Id.* The district court need not make point-by-point findings to correspond to the statutory factors, so long as its order "sufficiently tracks the factors, indicating that the [district] court considered them in making its decision." *Thomas v. Thomas*, 1999-NMCA-135, ¶ 16, 128 N.M. 177, 991 P.2d 7 (finding no abuse of discretion where the district "court's order indicates . . . concern[] about the emotional well-being of the children and that the children had close relationships with both parents, each of whom was able to take care of the children," and otherwise "counseled against" a joint custody arrangement based on facts relevant to the statutory factors). Our review of the minute and memorandum orders indicates that the district court sufficiently considered the requisite factors in making its decision, despite not explicitly stating its findings regarding each factor. Further, although the parties were both amenable to continuing in the 50/50 timesharing arrangement, the district court is nonetheless permitted to find that a different timesharing arrangement would be in Child's best interest, as occurred here. *See* § 40-4-9.1(F)(5) ("The court may accept [a] plan proposed by either party or it may . . . revise these plans as it deems necessary in the child's best interests.").

**{9}** We are unpersuaded by Mother's challenges to the validity of the recommendations of Ms. Cerami and the findings of the district court, as well as by her assertions of additional and contradictory evidence—some of which is not reflected in the record on appeal—that she argues should have amounted to a different result below. Our task on appeal is not to reweigh the evidence and substitute our judgment for that of the district court. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. When determining whether a district court's findings are supported by substantial evidence, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Id.* Further, we are precluded from

considering on appeal such facts and allegations that are not reflected in or supported by the record. *See Kepler v. Slade*, 1995-NMSC-035, ¶ 13, 119 N.M. 802, 896 P.2d 482 ("Matters outside the record present no issue for review." (internal quotation marks and citation omitted)).

**{10}** That Mother disagrees with the opinions of Ms. Cerami or the district court is immaterial to our analysis of whether the district court abused its discretion in modifying the time-sharing arrangements the parties share in their joint custody of Child. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Following our own thorough review of the record, we conclude that a reasonable mind would accept the evidence of Ms. Cerami's testimony as adequate to support the district court's custody determination. *See Raymond D.*, 2017-NMCA-067, ¶ 14. Viewing the evidence in the light most favorable to the district court's ruling, as we are required to do, *Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 24, 147 N.M. 625, 227 P.3d 115, we discern no error in the district court's enforcement of the terms of the August minute order through justified modification of the original custodial decree in this case.

## II.    Due Process

**{11}** Mother broadly claims that the district court violated her due process rights and fundamental liberty interest in parenting Child, generally citing precedent without providing analysis thereof. As best we can discern, Mother's due process contentions center on the district court's findings and orders as they relate to Child's education. Prior to the August minute order's filing, which ordered Child to attend in-person school in Albuquerque, Child attended school online—in part due to the COVID-19 pandemic. Mother asserts that the right to direct the education of one's child is a fundamental liberty protected by the due process clause and the state is precluded from infringing on such right. "While it is true that case law recognizes parents' fundamental constitutional right to raise their children," such "case law also establishes that parents' right to raise their children is not beyond regulation in the public interest." *Hopkins*, 2019-NMCA-024, ¶ 34 (alteration, internal quotation marks, and citation omitted). We reiterate that in matters such as these "[t]he 'best interests' criterion . . . is the lodestar for determining a custody award." *Jaramillo v. Jaramillo*, 1991-NMSC-101, ¶ 13, 113 N.M. 57, 823 P.2d 299. The mere fact that Mother wishes Child to be enrolled in a different educational program than that which the district court ordered is an insufficient basis upon which to assert a due process violation.

**{12}** Further, Mother's argument in this regard lacks any meaningful analysis or application of law to the facts at hand, as this section of her brief in chief consists of a single paragraph asserting her perceived errors followed by over two pages of uninterrupted and unannotated passages from federal case law. Though we read Mother's pro se briefing with a tolerant eye, we are required to hold her "to the same standard of conduct and compliance with court rules, procedures, and orders as [we would hold] members of the bar." *Camino Real Env't Ctr., Inc. v. N.M. Dep't of Env't*, 2010-NMCA-057, ¶ 21, 148 N.M. 776, 242 P.3d 343. Without some analysis, application, or explanation of such authority as it relates to the facts of this case, we

consider this argument to be undeveloped and decline to further consider it. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

### III. Opportunity to Present Evidence

{13}    Mother contends she was never provided the opportunity to present evidence of reports from Children, Youth & Families Department (CYFD) and Para Los Niños regarding alleged child sexual abuse of Child by Father. The record does not support such an assertion. Rather, the record reflects that parties were notified of the August 2021 hearing on multiple motions by Mother and were directed to prepare evidence they wished to present to the district court. At the start of the August 2021 hearing, Father's counsel informed the court—without any objection or disagreement from Mother—that Mother's motions had been resolved and required no further attention. Further, Ms. Cerami testified that the allegations of abuse made by Mother against Father were unsubstantiated. Moreover, Mother declined to raise any issues regarding additional evidence when the district court gave parties the opportunity to raise questions following Ms. Cerami's testimony. For these reasons, we consider this argument to be without merit.

### IV. Alleged Judicial Misconduct

{14}    Mother argues the district court judge exhibited bias and a lack of impartiality throughout the proceedings. Mother attempts to demonstrate these assertions by identifying findings and statements by the district court judge with which Mother disagrees. Mother cites the Code of Judicial Conduct for the assertion that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety," Rule 21-102 NMRA, but does so without providing any analysis, argument, or factual assertion as to how the district court judge failed to comply with such rule. Mother's argument in this regard is unavailing, undeveloped, and we decline to consider it further.

### CONCLUSION

{15}    For the reasons stated above, we affirm.

{16}    **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**